DECISION.
{¶ 1} Defendant-appellant Mario Meatchem was adjudicated delinquent for burglary[1] and now argues that (1) there was insufficient evidence, as a matter of law, to adjudicate him delinquent for burglary; (2) the adjudication was against the manifest weight of the evidence; and (3) his trial counsel was ineffective for failing to present adequate objections to the magistrate's decision.
 {¶ 2} Because no person other than Meatchem's accomplices was "present or likely to be present" for the purposes of R.C.2911.12(A)(2), we hold that there was insufficient evidence to find Meatchem guilty of second-degree burglary. But third-degree burglary as defined in R.C. 2911.12(A)(3) is a lesser-included offense of burglary under R.C. 2911.12(A)(2).[2] Because the state proved all the elements of third-degree burglary beyond a reasonable doubt, we reverse the delinquency adjudication and remand the cause to the trial court for an adjudication of delinquency based on burglary as defined in R.C. 2911.12(A)(3).
 I. Getting High and Breaking into a Neighbor's House {¶ 3} Christopher Madden lived with his family in Blue Ash, Ohio. During the summer months of each year, Madden and his children camped in New Richmond. They did not live in the Blue Ash house at all during the summer. Since Madden worked in Montgomery (which is a neighboring municipality), he would stop by and check the house a few times a week. Unfortunately for Madden, a neighborhood juvenile, Steffan Donnellon, knew that Madden and his family did not reside in the house during the summer.
 {¶ 4} Donnellon initially met Meatchem the morning of the burglary at a neighborhood carwash. Donnellon stated that he and his friends had been listening to music and talking about marijuana when Meatchem had approached them about where he could "get a half ounce." Donnellon testified that he had told Meatchem to join them, because he knew where they could get "some weed."
 {¶ 5} Donnellon, Meatcham, and three other boys — Matt Trost, Joseph McDermitt, and Demetris Hall — then went to Donnellon's house to smoke marijuana, drink Hennessey, and listen to music. Donnellon testified that the boys had decided to break into Madden's house because they had been "bored."
 {¶ 6} All the boys except Trost entered the Madden house in the early afternoon by breaking down a dog door. The boys took video games and some stereo equipment the first time they entered the house.
 {¶ 7} But the break-in did not go unnoticed. A neighbor saw the boys enter and contacted Madden and the police. When the police arrived, the boys had already fled to Donnellon's house.
 {¶ 8} When Trost rejoined the boys later in the afternoon, he wanted to enter the Madden house as well. So the boys entered through the dog door again, this time searching for a safe. But the neighbor again saw the boys enter the house and called the police. This time, the police arrived in time and caught four of the boys as they left the residence — Donnellon, Trost, Hall, and McDermitt. The police did not search the house, and Meatchem was not apprehended.
 {¶ 9} When questioned, the four boys described Meatchem as an accomplice, but did not know his name, since they had just met him only hours earlier. Each described Meatchem, and the police went to the carwash and gas station where the boys had met him. The gas station's manager recalled a young man fitting Meatchem's description as someone who had earlier harassed one of his salesclerks.
 {¶ 10} When Meatchem returned to the gas station a few days later, the manager called the police. The police then learned Meatchem's name and address and placed his picture in a photo lineup. All the boys who were shown the lineup identified Meatchem as the person who had been with them during the burglary.
 {¶ 11} Meatchem denied the boys' allegations and claimed that he had never entered Madden's house. Instead, Meatchem asserted that he knew Donnellon and Trost only through a pick-up football game he had joined at a local park. Meatchem also asserted that he could not have committed the burglary because he had attended Southern Ohio College at night. He testified that Lori Colbert, his brother's girlfriend, drove him to class every day. She corroborated his account by testifying that she could not recall his missing any days of school.
 {¶ 12} The trial court found Donnellon and Trost's testimony to be more credible and adjudicated Meatchem delinquent based on the crime of burglary in violation of R.C. 2911.12(A)(2), a second-degree felony. Meatchem was then committed to the Department of Youth Services for a minimum term of one year and a maximum term that would end on his 21st birthday.
 II. Sufficiency of the Evidence {¶ 13} In his first assignment of error, Meatchem argues there was insufficient evidence as a matter of law to convict him of burglary in violation of R.C. 2911.12(A)(2). Meatchem contends that the state failed to produce sufficient evidence to prove an essential element of burglary as a second-degree felony — namely, that a person other than one of his accomplices had been "present or likely to be present" at the time of the offense.
 {¶ 14} Under R.C. 2911.12(A)(2), "No person, by force, stealth, or deception, shall * * * [t]respass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense."
 {¶ 15} When reviewing the sufficiency of the evidence, we must examine the evidence in the light most favorable to the state and determine whether that evidence could have convinced any rational trier of fact that the essential elements of the crime had been proved beyond a reasonable doubt.[3]
 {¶ 16} Thus, the issue before this court is whether any person other than an accomplice of Meatchem was present or likely to be present at Madden's house. To determine whether people were present or likely to be present under R.C. 2911.12(A)(2), a defendant's knowledge about habitation is not material. "The issue is not whether the burglar subjectively believed that persons were likely to be there, but whether it was objectively likely."[4] The significant inquiry is the "probability or improbability of actual occupancy which in fact exists at the time of the offense, determined by all the facts surrounding the occupancy."[5] Merely showing that people dwelled in the residence is insufficient. Instead, the state must adduce specific evidence that people were present or likely to be present.[6] And as the Ohio Supreme Court has stated, "Where the state proves that an occupied structure is a permanent dwelling house which is regularly inhabited, that the occupying family was in and out on the day in question, and that such house was burglarized when the family was temporarily absent, the state has presented sufficient evidence to support a charge of [burglary under R.C. 2911.12(A)(2)]."[7]
 {¶ 17} "Likely" means more likely than not. That is, there must be a greater than 50% percent likelihood that someone will be in the dwelling at the time of the burglary.
 {¶ 18} The burden is on the state to prove every element of the offense. At Meatchem's trial, there was scant testimony on this issue.
 {¶ 19} Madden and his children did not live in their house during the summer. Instead, they camped in New Richmond. Madden worked in a neighborhood near the house and testified that he would check on the house a "few times a week." Checking on a house a few times a week for a few minutes cannot constitute being "present or likely to be present" under R.C. 2911.12. We do not even know if anyone was "likely to be present" even if Madden and his family were not camping all summer. For example, if the children were always in school and Madden was always at work at a certain time, the case would be similar to State v.Brown,[8] where we held that when the homeowner worked all day, and there was no evidence that he regularly came home during the day, the state had failed to prove that a person was likely to be present.
 {¶ 20} We, therefore, hold that the state failed to present sufficient evidence to support a conviction for burglary in violation of R.C. 2911.12(A)(2).
 III. Lesser-Included Offense {¶ 21} Nevertheless, we note that R.C. 2911.12(A)(3) sets forth a lesser-included offense to the one for which Meatchem was charged in this case. Under R.C. 2911.12(A)(3), "No person, by force, stealth, or deception, shall * * * [t]respass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, with purpose to commit in the structure or separately secured or separately occupied portion of the structure any criminal offense."
 {¶ 22} The Ohio Supreme Court has constructed a three-prong test to determine whether a criminal offense is a lesser-included offense of another: "(1) the offense carries a lesser penalty than the other; (2) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (3) some element of the greater offense is not required to prove the commission of the lesser offense."[9]
 {¶ 23} As we have noted, R.C. 2911.12(A)(3) defines burglary as trespassing in an occupied structure by force, stealth, or deception with the purpose to commit in the structure any criminal offense. Thus, R.C. 2911.12(A)(3) omits the one element on which the state had failed to present sufficient evidence in this case — the presence or likely presence of someone other than an accomplice of the offender. Because burglary as defined in R.C. 2911.12(A)(2) cannot be committed without also having committed the lesser offense set forth in R.C. 2911.12(A)(3), there was sufficient evidence to adjudicate Meatchem delinquent as to the lesser offense of burglary.
 {¶ 24} When the evidence shows that a defendant is not guilty of the degree of the crime for which he was convicted, but is guilty of a lesser-included offense, a court may, instead of granting a new trial, modify the conviction.[10]
Accordingly, we reverse Meatchem's adjudication as delinquent for a violation of R.C. 2911.12(A)(2), and we remand to the trial court with instructions to enter an adjudication of delinquency based on the lesser-included offense of burglary in violation of R.C. 2911.12(A)(3). Meatchem's first assignment of error is thus sustained.
 IV. Manifest Weight {¶ 25} In his second assignment of error, Meatchem argues that his adjudication was against the manifest weight of the evidence. We recast this assignment of error as a challenge to the balance struck by the juvenile court in weighing the evidence supporting a conviction for burglary in violation of R.C.2911.12(A)(3).
 {¶ 26} A review of the manifest weight of the evidence puts the appellate court in the role of a "thirteenth juror."[11] We must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice.[12] A new trial should be granted only in exceptional cases, where the evidence weighs heavily against conviction.[13]
 {¶ 27} R.C. 2911.12(A)(3) proscribes trespassing in an occupied structure by force, stealth, or deception, with a purpose to commit a crime.
 {¶ 28} Donnellon and Trost testified that, with Meatchem, they had broken into Madden's house through the dog door and had stolen video games and stereo equipment. Madden confirmed in his testimony that the boys had not had his permission to be in his house and had stolen video games and stereo equipment.
 {¶ 29} Meatchem claimed that he had not broken into Madden's house and had instead been at class at Southern Ohio College. But our review of the record does not persuade us that the trial court lost its way and created a manifest miscarriage of justice in concluding that the state had met its burden of proving those elements of burglary set forth in R.C. 2911.12(A)(3). Accordingly, we overrule Meatchem's second assignment of error.
 V. Ineffective Assistance {¶ 30} Meatchem's third assignment of error challenges the effectiveness of his trial counsel in failing to file proper objections to the magistrate's decision.
 {¶ 31} In Strickland v. Washington, the United States Supreme Court enunciated the two-prong standard for evaluating claims of ineffective assistance of counsel.[14] The defendant must show that counsel's representation fell below an objective standard of reasonableness, overcoming a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.[15] And the defendant must show that counsel's performance prejudiced the defense so as to have deprived the defendant of a fair trial.[16] To prove prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."[17]
 {¶ 32} In this case, Meatchem's trial counsel filed objections to the magistrate's decision with the trial court and challenged the decision as against the manifest weight of the evidence, but not the sufficiency of the evidence. Because we have addressed both the manifest weight of the evidence and the sufficiency of the evidence in this appeal, trial counsel's failure to raise it in the form of an objection to the magistrate's decision cannot be said to have been prejudicial. Thus, we overrule Meatchem's third assignment of error.
 {¶ 33} The judgment of the juvenile court is reversed, and this case is remanded for further proceedings in accordance with the terms of this decision.
Judgment reversed and cause remanded.
Hildebrandt, P.J., and Gorman, J., concur.
[1] R.C. 2911.12(A)(2).
[2] See State v. Brown (April 28, 2000), 1st Dist. No. C-980907.
[3] See State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus.
[4] See State v. Cravens (June 25, 1999), 1st Dist. No. C-980526. See, also, State v. Brown (Apr. 28, 2000), 1st
Dist. No. C-980907.
[5] Id., citing State v. Durham (1976), 49 Ohio App.2d 231,239, 360 N.E.2d 743.
[6] Id., citing State v. Fowler (1983), 4 Ohio St.3d 16,18-19, 445 N.E.2d 1119.
[7] Id., citing State v. Kilby (1977), 50 Ohio St.2d 21,361 N.E.2d 1336, paragraph one of the syllabus.
[8] (Apr. 28, 2000), 1st Dist. No. C-980907.
[9] See State v. Barnes, 94 Ohio St.3d 21, 25-26, 2002-Ohio-68, 759 N.E.2d 1240, citing State v. Deem (1988),40 Ohio St.3d 205, 533 N.E.2d 294, paragraph three of the syllabus.
[10] See Crim.R. 33(A)(4). See, also, State v. Harris (1996),109 Ohio App.3d 873, 876, 673 N.E.2d 237.
[11] See State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541.
[12] Id., citing Tibbs v. Florida (1982), 457 U.S. 31, 42,102 S.Ct. 2211.
[13] Id.
[14] See Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052.
[15] Id. at 687-688.
[16] Id.
[17] Id. at 694.