DECISION. *Page 2 
{¶ 1} Defendant-appellant Allen Bettis was convicted of one count of possessing marijuana in an amount greater than 1000 grams but less than 5000 grams, in violation of R.C. 2925.11(A), and one count of trafficking in marijuana in an amount greater than 1000 grams but less than 5000 grams, in violation of R.C. 2925.03(A)(2), both felonies of the third degree. He was sentenced to consecutive one-year terms of incarceration. Bettis has appealed.
 {¶ 2} Bettis's first assignment of error alleges that his convictions were based upon insufficient evidence and against the manifest weight of the evidence.
 {¶ 3} In late September of 2005, agents of the Department of Justice in California notified Cincinnati Regional Narcotics Unit ("RENU") officers about a suspicious package that had been shipped by United Parcel Service ("UPS") from California to Cincinnati. Deployment of a drug-sniffing dog had alerted the agents that the package contained narcotics. Cincinnati RENU agents intercepted the package, which had been shipped from a known California "source location" for illegal drugs to Bond Hill, an area known for drug trafficking in Cincinnati. Deployment of a second drug-sniffing dog alerted the Cincinnati agents that the package contained narcotics. RENU agents obtained a search warrant, opened the package, and discovered that it contained marijuana.
 {¶ 4} The package was addressed to "Mary Bettis" at 1712 Catalina Ave. Investigation by RENU agents revealed that "Mary Bettis" did not exist. Police set up a controlled delivery of the package, with one of the RENU agents posing as a UPS delivery employee. Police and RENU agents began surveillance on Catalina Avenue. The undercover RENU agent arrived in a white van with backup officers hidden *Page 3 
inside. The RENU agent attempted to deliver the package to 1712 Catalina. The agent twice knocked and announced, "UPS." But no one answered the door. The agent walked to the curb outside the residence. As he pretended to make a telephone call, he noticed two men walking toward him. One of the men was Bettis.
 {¶ 5} Bettis, who lived at 1714 Catalina, approached the agent and asked about the package. The agent testified that Bettis wanted to know where and to whom the package was going. The agent told Bettis that the package was addressed to 1712 Catalina. The agent testified, "He said, who? I said, Mary. He said, Bettis? I said, yes. Oh, so you're Mr. Bettis, will you take this package?"
 {¶ 6} The agent testified that Bettis told him that his name was Bettis and that he lived at 1714 Catalina. According to the agent, Bettis wanted the package. Bettis attempted to show the agent some identification so that he could accept the package. The agent then telephoned his lieutenant for instructions about whether to allow Bettis to accept the package. The lieutenant told the agent to have Bettis go to the van under the guise of filling out an addendum so that he could accept the package. Bettis followed the agent to the van, where he was immediately arrested. A subsequent search of Bettis's home revealed crack pipes and two triple-beam scales. A videotape of the exchange between Bettis and the agent was introduced at trial.
 {¶ 7} The inquiry made in reviewing the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that all the essential elements of the offenses had been proved beyond a reasonable doubt.[1] To reverse a conviction based upon the manifest weight of the evidence, we must determine that the jury, in *Page 4 
resolving conflicts in the evidence, clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.[2]
 {¶ 8} Bettis was convicted of violating R.C. 2925.11(A), which provides that "no person shall knowingly obtain, possess, or use a controlled substance." The state had to prove that Bettis knowingly possessed marijuana in an amount that exceeded 1000 grams but was less than 5000 grams.
 {¶ 9} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."[3] Whether a person acted knowingly generally must be determined from all the surrounding facts and circumstances.[4] Therefore, "the test for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria."[5]
 {¶ 10} R.C. 2925.01(K) states that "possession" is "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Possession may be actual or constructive.[6] Constructive possession exists when a person is able to exercise dominion and control over an item, even without physically possessing it.[7] Circumstantial evidence is sufficient to prove constructive possession.[8] *Page 5 
 {¶ 11} Following a review of the record, we hold that there was insufficient evidence that Bettis possessed the marijuana. Bettis never actually possessed the marijuana. The RENU agent never relinquished possession of the package. Bettis was not given the opportunity to exercise dominion or control over the package. Under the circumstances, he could not have constructively possessed the package because dominion and control remained with the agent at all times.
 {¶ 12} The following cases, involving controlled delivery of drugs by undercover agents, are distinguishable on their facts: United States v.Lewis[9] (defendant had constructive possession of crack cocaine removed by police from a UPS package because he had called UPS to determine the arrival time of the package and had arranged for co-defendants to pick it up); United States v. Quesada[10] (defendant had constructive possession of cocaine confiscated from a UPS package by police because he had the 11-digit UPS tracking number); State v.Ramirez[11] (defendant possessed marijuana where he directed delivery of packages to a motel room); State v. Fabian[12] (defendant possessed drugs where the package was addressed to him, defendant told the undercover delivery agent that the package contained a check and that it was late, defendant signed for the package, and he later attempted to dispose of the contraband); State v. Smith[13] (defendant constructively possessed drugs where he had the shipper's invoice for three marijuana-filled crates); State v. Saddler[14] (defendant possessed drugs where he supplied the name of the addressee, reached for the package, signed for it, and took it into an apartment); State v.Williams[15] (defendant constructively possessed drugs where he directed *Page 6 
another to pick up the package at a post office); State v.Anderson[16] (defendant constructively possessed cocaine where he directed others to accept and pick up package, and made numerous phone calls to city of package's origin).
 {¶ 13} The evidence would have supported a conviction, pursuant to R.C. 2923.02, for attempted possession of marijuana. R.C. 2923.02
provides that "no person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." The facts and circumstances were sufficient to support an inference that Bettis had knowingly attempted to possess the marijuana.
 {¶ 14} When the evidence shows that a defendant was not guilty of the crime for which he was convicted, but was guilty of a lesser-included offense, a court may modify the conviction instead of granting a new trial.[17] This cause must be remanded to the trial court with instructions to enter an acquittal on the charge of possession of marijuana and a conviction on the lesser-included offense of attempted possession of marijuana in an amount greater than 1000 grams but less than 5000 grams.
 {¶ 15} Bettis was also convicted of trafficking in marijuana in violation of R.C. 2925.03(A)(2), which provides that no person shall knowingly "prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person." To convict Bettis for drug trafficking, the prosecution had to prove that he knowingly (1) prepared the marijuana for shipment; (2) shipped, transported or delivered the *Page 7 
marijuana; (3) prepared the marijuana for distribution; or (4) distributed the marijuana.[18] We hold that the record contains insufficient evidence that Bettis trafficked in marijuana. Therefore, this cause must be remanded with instructions to the trial court to enter a judgment of acquittal on the charge of trafficking in marijuana. The first assignment of error is sustained.
 {¶ 16} Bettis's second and fourth assignments of error allege that the trial court erred in imposing Bettis's sentences. The assignments are sustained solely because we have determined that Bettis's convictions must be reversed, and, therefore, his sentences must be vacated. The cause must be remanded for the imposition of sentence upon Bettis for attempted possession of marijuana in an amount that exceeded 1000 grams but was less than 5000 grams.
 {¶ 17} Bettis's third assignment of error, which alleges that the trial court erred in refusing to grant a mistrial because the state withheld evidence favorable to the defense, is overruled.
 {¶ 18} "A trial court has broad discretion in regulating discovery and in determining an appropriate sanction for discovery violations."[19]
The trial court's decision to grant or deny a motion for a mistrial will not be reversed absent an abuse of discretion.[20] A trial court should declare a mistrial "only when the ends of justice so require and a fair trial is no longer possible."[21]
 {¶ 19} One of the RENU officers who had been conducting surveillance for the controlled delivery testified that about 20 to 30 minutes prior to the anticipated *Page 8 
delivery of the package, a rental car carrying two occupants appeared on Catalina. The occupants exited from the car and stood "observing" the area. As Bettis was arrested, both of the individuals left the area, one in the rental car. Police followed the rental car and subsequently stopped it in a convenience store parking lot. A check of the driver revealed that he was from Southern California and that he had "some drug history out of California." The officer stated that a field interrogation report ("FIR") card was completed for the driver, which included his name, address, and driver's license number. The officer testified on cross-examination that the FIR card was not provided to the prosecutor.
 {¶ 20} Bettis's counsel moved for a mistrial on the ground that the FIR card was evidence favorable to the defense that had been withheld by the state. Bettis's counsel argued that the information on the FIR card could have been used to assist the defense in finding the "real guilty parties." The trial court ordered the FIR card to be produced for the defense. The card was turned over to the defense during a recess and was used by the defense in cross-examining the officer.
 {¶ 21} Bettis cannot show that he was prejudiced because there is no reasonable probability that an earlier disclosure of the FIR card would have changed the outcome of the trial. The jury was well aware that a car with a driver from California who had a "drug history" was in the area and that it had been stopped by police. The jury was also aware of defense counsel's theory that the car's occupants were the guilty parties. The jury rejected defense counsel's theory. We hold that the trial court did not abuse its discretion in denying Bettis's motion for a mistrial.
 {¶ 22} The fifth assignment of error, alleging that the trial court erred in denying Bettis's motion to suppress the evidence recovered from his home, is overruled. The RENU officer testified that Bettis consented to a search of his home. *Page 9 
Bettis denied that he consented to the search. Issues of credibility were for the trial court to decide.[22] The trial court believed the officer's testimony.
 {¶ 23} The judgment of the trial court is reversed, and the cause is remanded to the trial court with instructions to enter judgments of acquittal on the charges of possessing marijuana and trafficking in marijuana, and to enter a judgment of conviction on and impose a sentence for the offense of attempted possession of marijuana in an amount that exceeded 1000 grams but was less than 5000 grams.
Judgment reversed and cause remanded.
PAINTER, P.J., and CUNNINGHAM, J., concur.
RALPH WINKLER, retired, from the First Appellate District, sitting by assignment.
[1] See State v. Jenks (1991), 61 Ohio St.3d 259, 674 N.E.2d 492, paragraph two of the syllabus; State v. Roberts, 1st Dist. No. C-040547,2005-Ohio-6391.
[2] See State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52,678 N.E.2d 541; State v. Martin (1983), 20 Ohio App.3d 172,485 N.E.2d 717.
[3] R.C. 2901.22(B).
[4] See State v. Huff (2001), 145 Ohio App.3d 555, 763 N.E.2d 695;State v. Green (Apr. 20, 1988), 1st Dist. No. C-860791.
[5] See State v. McDaniel (May 1, 1998), 2nd Dist. No. 16221, citingState v. Elliott (1995), 104 Ohio App.3d 812, 663 N.E.2d 412.
[6] See State v. Hankerson (1982), 70 Ohio St.2d 87, 434 N.E.2d 1362, syllabus; State v. Haynes (1971), 25 Ohio St.2d 264,267 N.E.2d 787.
[7] See id.; State v. Wolery (1976), 46 Ohio St.2d 316,348 N.E.2d 351.
[8] See State v. Upton, 1st Dist. No. C-050076, 2006-Ohio-1107;State v. Murrell, 1st Dist. No. C-020333, 2003-Ohio-2068.
[9] (Apr. 21, 1998), C.A.6 No. 96-3797/9603798/96-3955.
[10] (Sept. 4, 1991), C.A.10 No. 90-2124.
[11] 10th Dist. No. 01AP-859, 2002-Ohio-4298.
[12] 11th Dist No. 2001-T-0080, 2002-Ohio-3152.
[13] 8th Dist. No. 79301, 2002-Ohio-1650.
[14] (Oct. 21, 1999), 8th Dist. No. 74218.
[15] (1996), 117 Ohio App.3d 488, 690 N.E.2d 1297.
[16] (Nov. 27, 1996), 8th Dist. No. 69620.
[17] See App.R. 12(B); In re Meatchem, 1st Dist. No. C-050291,2006-Ohio-4128; State v. Cobb, 153 Ohio App.3d 541, 2003-Ohio-3821,795 N.E.2d 73; State v. Harris (1996), 109 Ohio App.3d 873,673 N.E.2d 237.
[18] See State v. Cabrales, 1st Dist. No. C-050682, 2007-Ohio-857;State v. Hatcher (July 31, 1997), 8th Dist. No. 70857; State v.Anderson, supra.
[19] See State v. Weir, 1st Dist. No. C-050236, 2006-Ohio-4127, citingState v. Wiles (1991), 59 Ohio St.3d 71, 571 N.E.2d 97.
[20] See id., citing State v. Brewster, 1st Dist. Nos. C-030024 and C-030025, 2004-Ohio-2993, at ¶ 67, State v. Sage (1987),31 Ohio St.3d 173, 510 N.E.2d 343, and State v. McNeel (May 22, 1998), 1st Dist. No. C-960980.
[21] See State v. Brewster, supra, at ¶ 67, citing State v. Broe, 1st Dist. No. C-020521, 2003-Ohio-3054, at ¶ 36, and State v. McNeel, supra.
[22] See State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212. *Page 1