DECISION. *Page 2 
{¶ 1} Defendant-appellant Crystal Hart appeals her convictions and sentences for trafficking in crack cocaine,[1] possession of crack cocaine,[2] and possession of powder cocaine.[3] We affirm the findings of guilt and the sentence for possession of powder cocaine, but sustain her challenge to the remainder of her sentence.
 I. The Story {¶ 2} Police received information about drug sales from Hart's apartment. Officers obtained and executed a search warrant. The police received no response to a knock and ultimately used a battering ram on the door.
 {¶ 3} When the officers initially knocked down the door and looked into the apartment, Hart and a co-defendant, Kendric Matthews, were seated at the dining-room table. Hart's four-year-old daughter was also present somewhere in the apartment. As police entered, Matthews stood and ran, holding a plastic bag that contained over 22 grams of crack cocaine.
 {¶ 4} Officers testified at trial that this quantity of crack cocaine was consistent with drug sales rather than individual usage. While individual rocks of crack cocaine would generally cost between $10 and $40, the police testified that the amount of crack cocaine in the bag in Hart's apartment had a street value of between $1,200 and $1,600. An officer found $1,500, in denominations of $10s and $20s, in a closet in the apartment.
 {¶ 5} In Hart's kitchen, police found a glass measuring bowl, two glass mason jars, an ice cream scoop, and a knife, all covered with cocaine residue. These items are *Page 3 
typically used to process crack cocaine. On the kitchen table, which was also coated with a white residue, were a bag of marijuana and a box of plastic baggies. Plastic baggies are used to distribute crack cocaine. Police also found both a digital scale, which can be used to weigh crack cocaine before selling it, and a plastic bag of powder cocaine.
 {¶ 6} Officer David Hall gave Miranda warnings to Hart and Matthews, and Hart was then questioned by Officer Scott Bode. She told him that the apartment, the $1,500 in the closet, the marijuana, and the powder cocaine were all hers.
 {¶ 7} Hart was indicted on four counts for (1) trafficking in crack cocaine in the vicinity of a school or juvenile, a first-degree felony;[4] (2) possession of crack cocaine, a second-degree felony;[5] (3) trafficking in powder cocaine in the vicinity of a school or juvenile, a fourth-degree felony;[6] and (4) possession of powder cocaine, a fifth-degree felony.[7] The state dropped the trafficking-in-powder-cocaine charge to keep the identity of an informant confidential.
 {¶ 8} A jury found Hart guilty on all three remaining counts. Hart was sentenced to five years for trafficking in crack cocaine, five years for possession of crack cocaine, to be served consecutively, and one year for possession of powder cocaine, to be served concurrently, for a total of ten years in prison.
 II. Seven Assignments of Error {¶ 9} Hart argues the trial court erred by (1) allowing a conviction based on insufficient evidence and against the manifest weight of the evidence; (2) allowing into evidence out-of-court statements of a confidential informant in violation of her *Page 4 
Confrontation Clause rights; (3) entering convictions and consecutive sentences for possession of and trafficking in the same drug; (4) overruling motions to suppress both Hart's statements to police and evidence seized from her apartment; (5) admitting prejudicial and irrelevant items into evidence; (6) failing to force the state to restrict its proof to the facts set forth in the bill of particulars; and (7) imposing a sentence in violation of sentencing guidelines and due process.
 III. Sufficiency and Manifest Weight of the Evidence {¶ 10} Hart's first assignment of error argues that the court erred by convicting her of possession of and trafficking in crack cocaine, because the state provided insufficient evidence to convict her, and because her conviction was against the manifest weight of the evidence.
 {¶ 11} Sufficiency of the evidence and weight of the evidence are separate legal concepts.[8] Sufficiency is a question of law concerning whether the evidence is legally adequate to sustain a conviction. To determine whether there was sufficient evidence to sustain a conviction, the reviewing court must view the evidence in a light most favorable to the prosecution, and then determine if any rational trier of fact could have found that the state had proved all the elements of the crimes beyond a reasonable doubt.[9]
 {¶ 12} In contrast, a challenge to the weight of the evidence attacks the credibility of the evidence.[10] A conviction should only be reversed if the reviewing court looks at the entire record, considers all evidence, inferences, and credibility, and determines that the *Page 5 
"jury clearly lost its way," creating a miscarriage of justice.[11] A new trial should only be granted in exceptional cases where the evidence weighs heavily against conviction.[12]
 {¶ 13} In her brief, Hart argues that there was no evidence to support her conviction for possession of crack cocaine because Matthews, not Hart, physically held the crack cocaine when the police officers entered, and thus, that there was no evidence she had ever exercised any control over it. Hart also contends that the state did not prove trafficking because there was no evidence that Hart prepared the crack cocaine for distribution or shipment, knowing it was intended for sale.
 {¶ 14} Possession is defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."[13] Possession can be either actual or constructive.[14] Constructive possession exists when a person is able to exercise control over the contraband, even if that person does not physically possess it.[15] Constructive possession can be shown through circumstantial evidence.[16]
 {¶ 15} The evidence that the state presented against Hart was legally sufficient. A rational juror easily could have found that Hart had both possessed and trafficked in crack cocaine.
 {¶ 16} To establish possession in this case, it was not enough to show that the crack cocaine was in Hart's apartment. But a rational juror could have inferred that Hart had control over the crack cocaine. When Matthews ran, he held the bag of crack in his hand. A rational juror could have inferred that he grabbed it off the table where he and *Page 6 
Hart were seated together — Hart would have been able to exercise control over the bag on the table. The element of control was bolstered by the fact that equipment used to cook crack cocaine was found in her apartment covered with cocaine residue. This evidence demonstrated much more than mere proximity and was legally sufficient for a rational juror to conclude that Hart had possessed the crack cocaine.
 {¶ 17} And the presence of 22 ounces of crack cocaine in the bag was consistent with drug sales. Officers found $1,500 in Hart's closet — the general amount that a bag of crack of that weight would have sold for — and Hart admitted the cash was hers. The measuring bowl, jars, knife, and ice cream scoop — items typically used to cook crack cocaine — were coated with cocaine powder residue. A box of plastic baggies, which are used to package drugs, and a digital scale, an item drug dealers use to weigh drugs in preparation for sale, were also found. The evidence was sufficient for a jury to find that Hart was using her kitchen to prepare crack cocaine for distribution.
 {¶ 18} Hart's conviction was not against the manifest weight of the evidence. In fact, unless the police had walked in the apartment and witnessed Hart actually preparing the drugs for distribution, the evidence against Hart could hardly have been stronger. Hart's first assignment of error is overruled.
 IV. Confrontation Clause {¶ 19} Hart contends that the trial court erred by allowing police to testify to statements made by a confidential informant, thus violating Hart's Sixth Amendment right to confront her accusers. The state argues that any testimony given by police about complaints of drug sales was background information not intended to prove that Hart was trafficking in crack cocaine, and thus not hearsay — the old "background" ruse. *Page 7 
 {¶ 20} Originally, Hart faced a fourth charge — trafficking in powder cocaine. The state dropped this charge to keep the identity of an informant confidential. Hart moved to reveal the informant's identity. The court denied her motion, concluding that the identity of the informant was "completely irrelevant," but allowed police to testify to what the confidential informant had said.
 {¶ 21} The United States Supreme Court determined in Crawford v.Washington that "[w]here testimonial evidence is at issue, * * * the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination."[17] The Court did not define "testimonial evidence," but concluded that, at a minimum, it involves prior testimony and police interrogations.[18] A later Ohio Supreme Court decision held that testimonial statements include statements that an objective person would believe might be used to prosecute the offender.[19]
 {¶ 22} The statements in this case were testimonial evidence. The confidential informant would have known that statements made to police about Hart selling drugs would be used to prosecute Hart. Statements made to the police describing illegal activities are usually testimonial.[20]
 {¶ 23} But not all testimonial evidence from confidential informants is barred by the Confrontation Clause. The Crawford Court noted, "The [Confrontation] Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."[21] *Page 8 
 {¶ 24} The federal Sixth Circuit decided United States v.Cromer[22] shortly after Crawford. The facts in Cromer are similar to the facts in this case: the defendant was convicted of possession of cocaine with intent to distribute, and police testified at trial to a confidential informant's statements. There was no direct evidence of the defendant's involvement, but there was circumstantial evidence linking the defendant to the drugs at a residence. A first trial ended in a hung jury. Police testified at the second trial to statements made by a confidential informant that had aided their investigation.
 {¶ 25} The Cromer court held that statements by confidential informants volunteered to police are testimonial.[23] Next it categorized the statements made by police at trial: (1) testimony that they were given information about an address associated with drug sales, (2) testimony that the focus of the investigation was the defendant, and (3) testimony giving a physical description of a person from whom the informant had purchased drugs.[24] (This appeal concerns only the first two categories.)
 {¶ 26} The court held that the first category of statements, naming an address where drug sales had reportedly occurred, did not violate the Confrontation Clause.[25] The officer testified only that the police were given an address connected with drug sales. The court determined that this testimony was only background, explaining why the officers took the actions they did, and was not offered to prove the truth of the matter. Perhaps.
 {¶ 27} Then the court considered the officer's statement in response to who might have been at the address: "Well, the focus of our investigation were [sic] for two subjects: one being a person nicknamed Nut, which is [the defendant]." The court held *Page 9 
that the officer's testimony explicitly implicated the defendant in illegal activities. Further, the officer's testimony went to the heart of the prosecution's case because it bolstered the tenuous evidence that the defendant had knowingly participated in the illegal activity at the residence.[26]
 {¶ 28} The Sixth Circuit realized the gravity of the violation: "The allowance of anonymous accusations of crime without any opportunity for cross-examination would make a mockery of the Confrontation Clause."[27]
 {¶ 29} Hart argues here that all statements of the confidential informant offered at trial through police testimony violated her right to confrontation. The state argues that because the circumstantial evidence of Hart's illegal activities was so strong, the testimony of police identifying the residence and Hart's name did not go to the heart of the prosecution's case and thus did not violate the Confrontation Clause.
 {¶ 30} Officers Mark Bemmes and Hall testified only that they had received complaints about drug sales at 658 Hawthorne. Officer Bode testified that he had received information about drug sales taking place at 658 Hawthorne, and that Hart's and her co-defendant's names were associated with that address.
 {¶ 31} We recently decided Hart's co-defendant's appeal, State v.Matthews.[28] We ruled that the testimony of the police officers about information provided by a confidential informant was background information and did not violate the Confrontation Clause. But Hart's case is distinguishable from Matthews. There, the evidence against the defendant was not circumstantial. As the court noted, the police officers caught him *Page 10 
holding a baggie of crack cocaine. On the other hand, the evidence against Hart was purely circumstantial.
 V. A Crawford and Cromer Violation {¶ 32} The state asserts that the confidential informant's statements did not go to the heart of the prosecution's case. Not so. When the evidence against a defendant is purely circumstantial, any testimony that strengthens the connection between the defendant and the crimes goes to the heart of the case.
 {¶ 33} Officers Bemmes and Hall testified that they had been told that drug sales were taking place at Hart's address. Obviously, if a jury hears that a certain address is a crack house, it will infer that the person living there is responsible for selling the drugs.
 {¶ 34} Officer Bode's testimony went even further. His testimony directly linked Hart to drug trafficking — the very thing the state set out to prove. Bode's testimony helped the prosecution to prove the truth of the matter — that Hart had knowingly participated in the trafficking of cocaine.
 {¶ 35} It does not matter if the testimony was not central to the prosecution's case. The analysis remains the same: the state offered hearsay evidence of a confidential informant. The informant's out-of-court statement named Hart — either directly or by identifying her address — as the person conducting the illegal activity, and Hart was denied the opportunity to cross-examine her accusers. The testimony violated Hart's Sixth Amendment right to confront her accusers.
 {¶ 36} As stated by the United States Supreme Court, "[w]hile some constitutional claims by their nature require a showing of prejudice with respect to the trial as a whole, * * * the focus of the Confrontation Clause is on individual witnesses. Accordingly, the focus of the prejudice inquiry in determining whether the *Page 11 
confrontation right has been violated must be on the particular witness, not on the outcome of the entire trial."[29]
 VI. Harmless Error {¶ 37} But our analysis does not end here. Violations of the Sixth Amendment right to confrontation are subject to a harmless-error analysis.[30] Hart's conviction cannot be set aside if this court determines that the trial court's error was harmless beyond a reasonable doubt.
 {¶ 38} To determine whether a trial court's error was harmless, a reviewing court considers (1) the importance of the testimony in the prosecution's case; (2) whether the offending testimony was cumulative; (3) whether other evidence materially corroborated or contradicted the testimony; (4) the extent of other cross-examination permitted; and (5) the strength of the prosecution's case as a whole.[31]
 {¶ 39} The confidential informant's hearsay statements connected Hart's name and address to illegal drug sales. But this evidence was not the overwhelming factor in the prosecution's case.
 {¶ 40} The officers' testimony about the confidential informant's accusations were overshadowed by the plethora of other evidence that connected Hart to drug sales: the cocaine residue in her kitchen and on the cooking equipment, the cooking equipment itself, the presence of $1500 in cash in her closet, the digital scale, and the baggies on her kitchen table. No evidence contradicted the confidential informant's statements: Hart was caught in the apartment at the table with drugs. The connection made by the hearsay *Page 12 
statements was cumulative at most. The prosecution's case as a whole was strong — and not made a whit stronger by the hearsay evidence.
 {¶ 41} The failure to allow Hart to cross-examine the confidential informant was harmless error. But we caution that in a closer case the outcome might well be different.
 {¶ 42} Hart's second assignment of error is overruled.
 V. Allied Offenses {¶ 43} Hart argues that the trial court erred in convicting and sentencing her for both trafficking in crack cocaine, in violation of R.C. 2925.03(A)(2), and possession of crack cocaine, in violation of R.C. 2925.11(A). This argument has merit.
 {¶ 44} We decided State v. Cabrales in March 2007.[32] That case determined that because it is impossible for a person to prepare for shipment or to transport cocaine without possessing the drug, the commission of trafficking under R.C. 2925.03(A)(2) results in possession, a violation of R.C. 2925.11(A).[33] Thus, we held that these offenses are "allied offenses of similar import,"[34] and we remanded the case so that the trial court could impose only one sentence. Cabrales is pending before the Ohio Supreme Court. We do note an error in Cabrales, in that we did not specifically overrule the prior case of State v. Foster.[35] But in State v. Matthews, decided in September 2007, we specifically overruled State v. Foster.[36]
 {¶ 45} We must set aside the multiple sentences imposed for the allied offenses and remand this case for the trial court to sentence Hart under either R.C. 2925.11(A) or *Page 13 
R.C. 2925.03(A)(2). In this respect, our judgment is stayed pending the outcome of the Ohio Supreme Court's decision in Cabrales.
 VI. Motion to Suppress {¶ 46} Hart also contests the trial court's decision overruling her motion to suppress.
 {¶ 47} Hart argues that the state failed to prove that it had adequately advised her of her Miranda rights. The uncontroverted evidence showed that Officer Hall read Hart the Miranda warnings within two minutes of his arrival at the residence, and that Hart indicated that she understood the warnings. There are no rigid rules that require the police to give a word-for-word recitation of Miranda.[37] Hart presented no evidence that the warnings were inadequate or that she did not understand the rights she was waiving.
 {¶ 48} Hart further argues that her statements to police were not voluntary, pointing out that Officer Hall testified at the suppression hearing that it was "possible" that he might have told Hart she would not be charged if she told police where drugs could be found in her house.
 {¶ 49} There is absolutely no evidence in the record that Officer Hall ever told Hart that she would not be arrested for the crack that had been found on Matthews if she revealed the location of other drugs in the home. The only "proof Hart had to the contrary was a question raised by her attorney to the officer. The officer first testified that he did not remember any conversation with Hart, other than giving her theMiranda warnings. Hart's attorney asked Hall, "Is it possible you told her, if you tell us where the *Page 14 
rest of the drugs are in the house, we wouldn't charge you with the crack?" Hall answered "Yes."
 {¶ 50} When a person does not remember a conversation, the only truthful answer to an "Is it possible you said* * *" question is "Yes." This was not sufficient to show that Hart's statements to police were involuntary or coerced.
 {¶ 51} Hart also contends that police are required to present a search warrant to the occupants of a residence at the outset of a search, and that because the police did not do so in this case, evidence gathered from the search should have been be suppressed.
 {¶ 52} The Ohio Supreme Court has held that evidence is ordinarily suppressed only when police commit a constitutional violation, and not when there is merely a violation of a statute or a rule.[38]
 {¶ 53} In this case, the officers did not violate Hart's constitutional rights. Police had a proper search warrant to enter Hart's residence. It is not clear from the record when Hart was presented with this warrant. But if the officers did not present the warrant to Hart at the outset of the search, their failure to do so was justified. Officer John Mercado testified that the warrant had been deemed high-risk, which meant that there was a high probability for the presence of weapons. The officers were forced to break down Hart's door to enter the apartment. Hart's co-defendant held a dark, long object in his hand. Although the object in the co-defendant's hand was a remote control, the officers had no way of knowing this before the apartment was secured. If officers always take the time to present a warrant prior to a high-risk search, they may endanger themselves, suspects, and any other civilians nearby.
 {¶ 54} Hart's fourth assignment of error is overruled. *Page 15 
 VII. Admission of Evidence {¶ 55} In her fifth assignment of error, Hart argues that the trial court's admission of a baggie of marijuana and a photograph of her four-year-old daughter and a baggie of marijuana violated her due-process rights because the evidence was prejudicial and irrelevant.
 {¶ 56} Evid.R. 401 provides that evidence is relevant if it makes a fact of consequence more or less probable. The challenged evidence was clearly relevant. The marijuana made it more likely that Hart was connected to the other drugs in the apartment. The photograph of the child showed that a juvenile was present when the crack cocaine was being prepared for distribution, an element of the first-degree trafficking charge.
 {¶ 57} Evid.R. 403 excludes relevant evidence if its "probative value is substantially outweighed by the danger of unfair prejudice." Whether to exclude evidence under this rule is in the sound discretion of the trial court.[39] The trial court did not abuse its discretion in this case: the admission of the photograph and the marijuana was not prejudicial.
 {¶ 58} Hart's fifth assignment of error is overruled.
 VIII. Bill of Particulars {¶ 59} Hart contends in her sixth assignment of error that because the state, in the bill of particulars, had specified that the trafficking activity had taken place "in the vicinity of a school" but had proved at trial that the activity had taken place "in the vicinity of a juvenile," the trial court should have dismissed the school specification. *Page 16 
 {¶ 60} Hart suffered no prejudice due to the specification of a "school" rather than a "juvenile." The indictment specified "in the vicinity of a school or in the vicinity of a juvenile," giving Hart clear notice of the charge. Obviously, the state should have been more careful. But we decline to invalidate a charge based on this minimal degree of carelessness. The bill of particulars itself stated that it incorporated the indictment. If Hart was in fact misled, she could have requested a continuance to prepare for the "new" charge. But she did not. Based on the language of the indictment, Hart was able to effectively present her defense.
 {¶ 61} Hart's sixth assignment of error is overruled.
 IX. Sentencing {¶ 62} In her seventh assignment of error, Hart argues the trial court erred by imposing a sentence that violated the sentencing guidelines and her due-process rights.
 {¶ 63} After State v. Foster, "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences."[40]
 {¶ 64} Other than a few traffic violations, this arrest was Hart's first brush with the legal system. According to friends and family, Hart had only recently begun to take drugs, which had led to a personality change. In her sentencing memorandum, Hart stated that she had participated in every program, educational opportunity, work detail, substance-abuse counseling session, and volunteer opportunity that was available at the justice center — she was incarcerated before trial. She earned her G.E.D. within two *Page 17 
months of being incarcerated and then became a teacher's assistant. The education coordinator noted that Hart was very focused and worked effectively with students. She served as a porter at the justice center, assisting corrections officers.
 {¶ 65} In light of these mitigating factors, ten years' incarceration seems like an excessive sentence. Perhaps Hart, her child, and the taxpayers would have been better served if she had been sentenced to a shorter prison term, followed by mandatory drug treatment, job training, and parenting education. But Hart's sentence was within the statutory range, and the trial court had the discretion to impose the sentence. Therefore, her seventh assignment of error must be overruled.
 {¶ 66} For the foregoing reasons, we vacate the two sentences imposed by the trial court for the counts involving crack cocaine and remand this case in light of Cabrales for the imposition of only one sentence for either the trafficking offense in violation of R.C.2925.03(A)(2) or the possession offense in violation of R.C. 2925.11(A). In all other respects, including the sentence imposed for possession of powder cocaine, the trial court's judgment is affirmed. To the extent that Hart's sentences are vacated, our judgment is stayed pending the outcome of the Ohio Supreme Court's decision in Cabrales.
Judgment affirmed in part and reversed in part; partial stay issued.
HILDEBRANDT and HENDON, JJ., concur.
[1] R.C. 2925.03(A)(2).
[2] R.C. 2925.11(A).
[3] R.C. 2925.11(A).
[4] R.C. 2503(A)(2).
[5] R.C. 2925.11(A).
[6] R.C. 2925.03(A)(1).
[7] R.C. 2925.11(A).
[8] State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52,678 N.E.2d 541, paragraph two of the syllabus.
[9] State v. Gordon, 1st Dist. Nos. C-060234 and C-06024, 2007-Ohio-1177, ¶ 18.
[10] State v. McKenzie, 1st Dist. No. C-050221,2006-Ohio-2223, ¶ 17.
[11] State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.
[12] Id.
[13] R.C. 2925.01(L).
[14] State v. Wolery (1976), 46 Ohio St.2d 316, 329, 348 N.E.2d 351;State v. Thomas, 1st Dist. No. C-020282, 2003-Ohio-1185, at ¶ 9.
[15] State v. Bettis, 1st Dist. No. C-060202,2007-Ohio-1724, at ¶ 10.
[16] Id.
[17] Crawford v. Washington (2004), 541 U.S. 36, 68,124 S. Ct. 1354.
[18] Id.
[19] State v. Stahl, 111 Ohio St.3d 186, 2006-Ohio-5482,855 N.E.2d 834, at ¶ 36.
[20] State v. Lewis, 1st Dist. Nos. C-050989 and C-060010, 2007-Ohio-1485, at ¶ 40, quoting United States v. Cromer
(C.A.6, 2004), 389 F.3d 662, 675.
[21] Crawford, supra, at 59.
[22] United States v. Cromer (C.A.6, 2004), 389 F.3d 662; See, also,United States v. Hearn (C.A.6, 2007), ___ F.3d ___, 2007 U.S. App. LEXIS 21703; United States v. Powers, (C.A. 2007), ___ F.3d ___, 2007 U.S. App. LEXIS 21824.
[23] Id. at 675.
[24] Id. at 672.
[25] Id. at 675-76.
[26] Id. at 676-77.
[27] Id. at 675.
[28] State v. Matthews, 1st Dist. Nos. C-060669 and C-060692,2007-Ohio-4881, at ¶ 12.
[29] Delaware v. Van Arsdall (1986), 475 U.S. 673, 680,106 S.Ct. 1431.
[30] Id. at 684.
[31] Id.
[32] State v. Cabrales, 1st Dist. No. C-050682, 2007-Ohio-857, discretionary appeal accepted, 114 Ohio St.3d 1410,2007-Ohio-2632, 867 N.E.2d 844.
[33] Id. at ¶ 36.
[34] Id. at ¶ 3.
[35] State v. Foster, 1st Dist. No. C-050378, 2006-Ohio-1567.
[36] State v. Matthews, 1st Dist. Nos. C-060669 and C-060692,2007-Ohio-4881, ¶ 35.
[37] State v. Dailey (1990), 53 Ohio St.3d 88, 90,559 N.E.2d 459.
[38] State v. Droste (1998), 83 Ohio St.3d 36, 40,697 N.E.2d 620.
[39] State v. Skatzes, 104 Ohio St.3d 195, 2004-Ohio-6391, at ¶107.
[40] State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, at ¶ 100. *Page 1