[Cite as *State v. Dewitt*, 2009-Ohio-5903.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

WILLIAM D. DEWITT, JR.,

    DEFENDANT-APPELLANT.

CASE NO. 1-09-25

O P I N I O N

Appeal from Allen County Common Pleas Court
Trial Court No. CR 2008 0261

**Judgment Affirmed**

Date of Decision:  November 9, 2009

APPEARANCES:

    *Destiny R. Hudson* **for Appellant**

    *Jana E. Emerick* **for Appellee**

**PRESTON, P.J.**

{¶1} Defendant-Appellant, William D. Dewitt, Jr. (hereinafter "Dewitt"), appeals the Allen County Court of Common Pleas' judgment of conviction and imposition of sentence following a jury verdict of guilty on one count of burglary and one count of possession of criminal tools. For the reasons that follow, we affirm.

{¶2} These charges stem from an event that took place on June 12, 2008. At approximately 11:35 p.m., officers were dispatched to a residence at 4747 Old Delphos Road, Elida, Ohio, in regards to a possible burglary in progress. Officer Dungan of the American Township Police Department, Officer Bowersock of the Elida Police Department, and Deputy Music of the Allen County Sheriff's Department all arrived at approximately the same time. Officer Dungan and Officer Bowersock investigated the back of the residence, while Deputy Music investigated the front of the residence. Officer Dungan noticed a vehicle parked in the back and then observed a subject run out of the residence. All three officers pursued the subject to a nearby field where the officers then apprehended the subject, later identified as Dewitt, and placed him under arrest.

{¶3} On July 17, 2008, the Allen County Grand Jury returned an indictment against Dewitt charging him with one count of burglary in violation of R.C. 2911.12(A)(2), a felony of the second degree; and one count of possession of

criminal tools in violation of R.C. 2923.24(A), (C), a felony of the fifth degree. On August 27, 2008, Dewitt entered pleas of not guilty to both charges in the indictment. On September 16, 2008, Dewitt filed a motion to suppress. A suppression hearing was held on October 6, 2008, and the trial court ultimately denied Dewitt's motion on October 7, 2008.

{¶4} A jury trial was conducted on April 21 & 22, 2009, and at the conclusion of the trial, the jury returned a guilty verdict on both offenses. Immediately following the trial, the trial court held a sentencing hearing and sentenced Dewitt to seven years imprisonment for the burglary conviction, and one year imprisonment for the possession of criminal tools conviction, sentences to be served concurrently.

{¶5} Dewitt now appeals and raises one assignment of error.

**ASSIGNMENT OF ERROR**
**THE APPELLANT'S CONVICTION IS NOT SUPPORT [SIC]**
**BY SUFFICIENT EVIDENCE AS THE APPELLEE FAILED**
**TO PROVE AN ESSENTIAL ELEMENT OF THE**
**BURGLARY OFFENSE.**

{¶6} In his assignment of error, Dewitt claims that his conviction on the burglary offense was not supported by sufficient evidence because the State failed to prove all of the essential elements of the offense. Specifically, Dewitt argues that there was insufficient evidence to prove that "any person other than an accomplice of the offender is present or likely to be present," and thus, his burglary conviction should be reversed.

{¶7} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks* (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, superseded by state constitutional amendment on other grounds in *State v. Smith* (1997), 80 Ohio St.3d 89, 684 N.E.2d 668. Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.

{¶8} Dewitt was found guilty of burglary in violation of R.C. 2911.12(A)(2), which states:

> **(A) No person, by force, stealth, or deception, shall do any of the following:**
>
> **\* \* \***
>
> **(2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with the purpose to commit in the habitation any criminal offense.**

In particular, Dewitt claims that the State failed to prove that any person "[was] present or likely to be present."

{¶9} In determining whether persons are likely to be present under R.C. 2911.12(A)(2), what the defendant knows at the time is irrelevant; rather, the issue is whether it was objectively likely that persons were likely to be there. *In re Meatchem*, 1st Dist. No. C-050291, 2006-Ohio-4128, ¶16. See, also, *State v. Durham* (1979), 49 Ohio App.2d 231, 239, 360 N.E.2d 743. The State must present specific evidence that people were present or likely to be present. *In re Meatchem*, 2006-Ohio-4128, at ¶16; *State v. Kilby* (1977), 50 Ohio St.2d 21, 361 N.E.2d 1336. A person is likely to be present when a consideration of all of the circumstances would seem to justify a logical expectation that a person could be present. *State v. Pennington*, 12th Dist. No. CA2006-11-136, 2007-Ohio-6572, ¶29, citing *State v. Green* (1984), 18 Ohio App.3d 69, 72, 480 N.E.2d 1128.

{¶10} Typically, where a burglary occurs and the occupying family is temporarily absent, a showing that the occupied structure is a permanent dwelling, which is regularly inhabited and the occupants were in and out on the day in question, will be sufficient evidence to support a conviction for burglary. *Kilby*, 50 Ohio St.2d at 25. Despite this fact, just showing that a permanent or temporary habitation has been burglarized does not give rise to the presumption that a person was present or likely to be present. *State v. Wilson* (1979), 58 Ohio St.2d 52, 59-60, 388 N.E.2d 745; *State v. Fowler* (1983), 4 Ohio St.3d 16, 18-19, 445 N.E.2d 1119. However, if the occupants of the dwelling are away for an extended period of time, such as on vacation, if there is evidence that the occupants have given a

neighbor or other caretaker permission or access to the home regularly, then there will be sufficient evidence that a person is likely to be present for purposes of a second-degree felony burglary offense. *State v. Hibbard*, 12th Dist. Nos. CA2001-12-276, CA2001-12-286, 2003-Ohio-707, ¶12. See, also, *State v. Blackmon* (Jan. 2, 1992), 9th Dist. No. 15099, at *5 (finding strong likelihood of someone being present where occupants were on vacation, but returned soon afterwards and had asked neighbor or relative to take care of house while away).

{¶11} At trial, the State called the owner of the residence, Steven Ostendorf (hereinafter "Ostendorf"), to testify about the events leading up to the night of the burglary. Ostendorf testified that for one week in June 2008, he and his family went down to the outer banks for a vacation. (Apr. 21, 2009 Tr. at 36-37). While he was not sure what week in June 2008 he and his family were on vacation, he did testify that they had left on Saturday and came back the following Saturday. (Id. at 37). Before they left for vacation, Ostendorf said that he had asked his neighbor, Randall Calvelage (hereinafter "Calvelage"), the following:

> **to stop over to my house when I was leaving. I had some trash that needed to be set out on Thursday night because they pick up trash on Friday morning. He said that he would go ahead and do that for me. So, I just left the trash out behind my home and he was going to come over and put it out on Thursday evening.**

(Id. at 38). Ostendorf said that while he was on vacation, he called Calvelage around two o'clock that Thursday, to remind him about taking the trash out. (Id.). Around one o'clock in the morning on that Thursday, Ostendorf said that he

received a call from the sheriff's department informing him that someone had broken into his house. (Id. at 39). While Ostendorf admitted on cross-examination that all he had asked Calvelage to do was to go to his house and empty the garbage, he did state that he had also "kind of left him [Calvelage] in charge of looking after things," while he was on vacation. (Id. at 38, 61).

{¶12} Calvelage was the only other person who provided testimony regarding the element of "presence" at the Ostendorf's residence. Calvelage stated that he lives right next door to Ostendorf and has known him and his family for a little longer than eight years. (Id. at 65-66). On the Tuesday before the Ostendorf's left for vacation, Ostendorf called Calvelage and asked him if he could take out his garbage for the Friday morning pick-up. (Id. at 67). Calvelage agreed, although he asked Ostendorf to call him back on that Thursday night to remind him to take out the garbage. (Id. at 67). Ostendorf called Calvelage that Thursday and reminded him about the trash, and around 11:30 p.m., Calvelage took out his trash to the road first, then walked down Ostendorf's driveway to his house to get Ostendorf's trash can. (Id. at 68). However, Calvelage said that he never got around to taking Ostendorf's trash to the road, because when he got to the back of the Ostendorf's house, he "noticed a light inside of [Ostendorf's] house that was moving around." (Id. at 68). As a result, Calvelage said that he ran back to his house and called 911. (Id. at 69).

{¶13} After viewing the evidence in a light most favorable to the prosecution, we believe that reasonable minds could find that Dewitt was guilty of burglary beyond a reasonable doubt, because in this particular case, not only was there sufficient evidence to show that a person was likely to be present the night of the break-in, but there was sufficient evidence to indicate that a person was present at the time the break-in was occurring. Even though the Ostendorfs were out of town on vacation on the night of the break-in, Ostendorf testified that he had asked Calvelage to look over things while he was gone, and specifically asked him to take out his trash on the Thursday night before Friday morning pick-up, which happened to be the night of the break-in. Calvelage did what was asked of him when he went over to Ostendorf's house at 11:30 p.m. that Thursday night. However, his task was never completed because when he reached the back of the Ostendorf house, he saw a light moving around inside the house and he ran back to his house to call the police.

{¶14} Dewitt cites to two cases in support of his position that there was insufficient evidence to establish that it would have been likely that someone would have been present at the time of the break-in: *State v. Bateman* (June 26, 1997), 10th Dist. No. 96APA09-1159; and, *State v. Beasley* (Aug. 12, 1982), 4th Dist. No. 893. We acknowledge that there are Ohio courts (including the above two cases) that have found that evidence supporting a conviction for second-degree burglary was insufficient where there was no evidence presented to

demonstrate that someone was regularly checking on the house. See *State v. Grimes* (May 19, 1982), 12th Dist. No. 1070 (conviction modified to lesser included offense of burglary where occupant was away from home for four months and evidence demonstrated no one else had a key to residence); *State v. Cantin* (1999), 132 Ohio App.3d 808, 726 N.E.2d 565 (finding insufficient evidence where occupant was on vacation for four days prior to burglary and no evidence demonstrated he had instructed anyone to check on premises while he was away or that anyone else had a key); *State v. Brown*, 10th Dist. No. 05AP-601, 2006-Ohio-2307 (finding insufficient evidence where occupying family was out of town more than a week and no one else was regularly checking on the residence); *State v. Bateman* (June 26, 1997), 10th Dist. No. 96APA09-1159, at *4-5 (finding insufficient evidence where occupant was out of town for a week and there was no evidence that he had given anyone a key to his apartment or permission to enter while he was gone); *State v. Beasley* (Aug. 12, 1982), 4th Dist. No. 893, at *3-4 (finding insufficient evidence where occupants had been on vacation and even though occupants had given a key to a family member and permission to enter the residence, but the family member failed to check on the place, evidence will not support a finding that anyone was present or likely to be present at the time of the trespass). Nevertheless, we find those cases distinguishable from this case and that our case is more analogous to the facts

presented in *State v. Pennington*, 12th Dist. No. CA2006-11-136, 2007-Ohio-6572.

**{¶15}** In *Pennington*, the Brennens were out of town for the holiday weekend, and although their daughter lived with them at the house, she did not have a key or access to the home while the Brennens were out of town. Id. at ¶37. Instead, Mr. Brennen had asked his next-door neighbor to keep an eye on the house while the family was away. Id. Although the State had failed to demonstrate any certainty that Mr. Brennen's neighbor would be at the home at the time of the burglary, the Twelfth District Court of Appeals found that Mr. Brennen's affirmative instruction to his neighbor to watch the family's house was sufficient evidence to demonstrate a likelihood that he could have been present at the home at the time of the burglary. Id. at ¶39. The court relied in part on the intent of the General Assembly in creating the elevating offense of second-degree felony burglary, which is "the protection of occupying residents from burglaries and the resulting potential harm by attempting to deter criminals." Id. at ¶40. The court found that those persons who have been instructed to watch over a residence should be included as those persons "likely to be present," given the overall purpose of the elevated offense (to protect persons from burglaries and from being harmed by attempting to deter criminals). Id. at ¶40, citing *Kilby*, 50 Ohio St.2d at 25.

**{¶16}** Here, just like the *Pennington* case, it was likely that someone would be present at the Ostendorf's residence at the time of the burglary given the fact that Ostendorf had asked Calvelage to watch over things and to come over to the house and take out the trash on Thursday night for Friday morning pick-up. *Pennington*, 2007-Ohio-6572, at ¶40. More importantly, and unlike the *Pennington* case, here Calvelage was actually present while the break-in was occurring since he had gone to the back of the house to pick up the trash and noticed a light moving around inside. See id. at ¶¶37-40. But, see, *State v. Hibbard*, 12th Dist. Nos. CA2001-12-276, CA2001-12-286, 2003-Ohio-707, at ¶17 (finding sufficient evidence where family was out of town on day of break-in, but resident's father was checking on house and discovered break-in). Given the intent of the General Assembly to protect those persons present during burglaries from being harmed, we believe that those persons who are instructed to watch over another's residence should be included as persons likely to be present for purposes of the elevated second-degree felony of burglary. In addition, we certainly believe that Calvelage's presence at the Ostendorf's property qualifies him as "any person present" under R.C. 2911.12(A)(2).

**{¶17}** Therefore, because we find that there was sufficient evidence that someone was "present or likely to be present" for purposes of the second-degree felony burglary offense under R.C. 2911.12(A)(2), we cannot find that the jury

lost its way in finding Dewitt guilty of the offense or that the evidence was otherwise insufficient.

{¶18} Dewitt's assignment of error is, therefore, overruled.

{¶19} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI, J., concurs.**

**ROGERS, J., concurs in Judgment Only.**

**/jnc**