OPINION
{¶ 1} Defendant-appellant, Shannon Pennington, appeals from his convictions in the Warren County Court of Common Pleas on two counts of burglary. For the reasons outlined below, we affirm the judgment of the trial court.
 {¶ 2} Appellant was indicted on July 31, 2006 on 11 counts relating to burglaries committed in May and June 2006. Appellant entered pleas of not guilty and proceeded to a *Page 2 
jury trial, held October 9 and 10, 2006. At trial, the testimony relevant to this appeal established that on June 28, 2006, at approximately 4:40 a.m., Patrolman Josh Holbrook of the Lebanon Police Department responded to a call concerning a Chevy Camaro sitting stationary at an intersection in Lebanon, Ohio. When Officer Holbrook approached the vehicle, he found the car in neutral and both the driver and a passenger passed out in their seats. Holbrook also observed appellant, the driver of the vehicle, with a sawed off shotgun between his legs.
 {¶ 3} Holbrook called for assistance from additional officers, who executed a plan to remove the gun. As officers attempted to remove the gun, appellant awoke and a struggle ensued. Eventually, officers were forced to taser appellant to obtain compliance. Appellant was placed in the back of a patrol cruiser where Patrolman James Burns asked him for his name and social security number. Burns described appellant as confused and disoriented, initially giving Burns false information before admitting that there were warrants out for his arrest for parole violations.
 {¶ 4} Appellant was placed under arrest and transferred to the Lebanon City Jail. Officers quickly obtained a search warrant for the Camaro appellant was driving. In executing the search warrant, officers located multiple guns and ammunition, a hacksaw and additional pieces of the sawed-off shotgun, and a presidential medals coin collection.
 {¶ 5} On June 29, 2006, Detective Christopher Brock of the Lebanon City Police Department interviewed appellant at the Lebanon City Jail. Appellant signed a card waiving his Miranda rights and agreed to speak with Det. Brock. During the interview, appellant admitted that he had participated in the burglary of a home belonging to Wayne Durham and Angel Deaton. The Durham-Deaton home was burglarized while the family was away for the weekend in Mt. Vernon, Kentucky from June 2 to June 5, 2006. When the family returned, they discovered that their home had been broken into and multiple items, including money, *Page 3 
blank checks, clothing and their yellow Ford Mustang were missing.
 {¶ 6} Appellant was arrested for DUI while driving this same Mustang on June 6, 2006. Appellant had been interviewed by Det. Brock on June 13, 2006 relating to his June 6 arrest, at which point appellant claimed he had been invited to the Durham-Deaton home by Tonya Shelton, Angel Deaton's niece, and that she had given him permission to drive the car. When interviewed by Det. Brock on June 29, 2006, appellant admitted that the Mustang he was driving when arrested was stolen during the burglary. Appellant told Det. Brock that the burglary was initiated by Shelton and that he had entered the home through a back window, stealing clothing, money, and blank checks, as well as the Mustang.
 {¶ 7} Appellant also admitted involvement in the burglary of a home belonging to Joseph and Phyllis Brannen. The Brannen home was burglarized while the family was in Manchester, Kentucy for the Memorial Day holiday weekend, May 26 through May 30, 2006. When the family returned, they found that their home had been broken into and several items, including jewelry, firearms, money, and a presidential medals coin collection, were missing.
 {¶ 8} During his interview with Det. Brock on June 29, 2006, appellant admitted that he was approached by April Hornsby, Phyllis Brannen's neice, about where he could get jewelry and guns. Appellant told Det. Brock that he then participated in the burglary of the Brannen home, stealing jewelry, multiple rifles and firearms, and the presidential medals coin collection which was found in the Camaro he was driving when he was arrested on June 28, 2006.
 {¶ 9} At trial, appellant testified and again claimed that he had been invited to the Durham-Deaton home by Tonya Shelton and that she had given him permission to drive the Ford Mustang. Appellant also claimed that he had purchased the guns, jewelry and coin collection from April Hornsby, not knowing that the items had been stolen from the Brannen home. *Page 4 
 {¶ 10} Based on the testimony as described above, the jury found appellant guilty on one count of having a weapon under disability, a third-degree felony in violation of R.C. 2923.13(A)(2); two counts of receiving stolen property, fourth-degree felonies in violation of R.C.2913.51(A); one count of possession of criminal tools, a fifth-degree felony in violation of R.C. 2923.24(A); one count of theft, a fourth-degree felony in violation of R.C. 2913.02(A)(1); and two counts of burglary, second-degree felonies in violation of R.C. 2911.12(A)(2), with a specification to the second count of burglary that appellant possessed a firearm during the burglary. On October 24, 2006, the trial court sentenced appellant to an aggregate term of 11 years in prison. Appellant then filed this appeal, raising two assignments of error for our review.
 {¶ 11} Assignment of Error No. 1:
 {¶ 12} "THE TRIAL COURT ERRED IN ENTERING A FINDING OF GUILTY WHEN THE DEFENDANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO COMPETENT COUNSEL."
 {¶ 13} In his first assignment of error, appellant argues that he was denied the effective assistance of counsel because his attorney failed to file a motion to suppress the statements and admissions appellant made to Det. Brock when he was interviewed on June 29, 2006. Appellant argues that he did not effectively waive his Miranda rights and that had his attorney filed the motion and successfully suppressed his statements to Det. Brock, appellant would not have been convicted. We disagree.
 {¶ 14} To prevail on an ineffective assistance of counsel claim, a criminal defendant must demonstrate both that his counsel's performance was deficient, and that he was prejudiced by that deficient performance.Strickland v. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052. Failure to sufficiently establish either element will preclude the claim. Id. To demonstrate that counsel's performance was deficient, a defendant must show that his *Page 5 
counsel's representation "fell below an objective standard of reasonableness." Id. at 687-688. To show that he was prejudiced by that deficient performance, a defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. Id. at 694.
 {¶ 15} The failure to file a motion to suppress is not per se ineffective assistance of counsel. State v. Scott, Warren App. No. CA2005-12-134, 2007-Ohio-1094, ¶ 8, citing Kimmelman v. Morrison (1986),477 U.S. 365, 106 S.Ct. 2574; State v. Drummond, 111 Ohio St.3d 14,2006-Ohio-5084, ¶ 208. Failure to file a motion to suppress signifies the ineffective assistance of counsel only where the record establishes that the motion would have been successful if made. State v. Kelly, Butler App. No. CA2006-01-002, 2007-Ohio-124, ¶ 25; State v.Robinson (1996), 108 Ohio App. 3d 428, 433. Where a record contains no evidence that would justify the filing of a motion to suppress, appellant has not met the burden of proving that trial counsel violated an essential duty by failing to file the motion. Scott at ¶ 9.
 {¶ 16} We note that in the case at bar, appellant asserts that he was intoxicated at the time he signed the Miranda waiver and that any statements or admissions he made to Det. Brock were not made knowingly, intelligently, or voluntarily. However, appellant has failed to establish that any motion to suppress would have been successful. On the contrary, the record demonstrates that Det. Brock interviewed appellant more than 24 hours after he was found passed out at the stop sign and observed to be "confused and disoriented." Det. Brock testified that appellant did not appear to be under the influence of any intoxicants when he signed the Miranda waiver. Det. Brock explained that appellant did not slur his words and never indicated that he did not understand the questions posed to him. Det. Brock also testified that appellant proceeded to provide details of the two burglaries which matched the reports, including specifically identifying the multiple firearms which were removed from the Brannen home. Based on this evidence, we find that the record does not indicate that a *Page 6 
motion to suppress would have been justified or successful in this case. Appellant has failed to establish that his trial counsel's failure to file a motion to suppress in this case fell below the objective standard of reasonableness.
 {¶ 17} Additionally, the party asserting a claim of ineffective assistance on the basis of trial counsel's failure to file a motion to suppress must show that the failure to file the motion caused him prejudice. Scott, 2007-Ohio-1094, ¶ 8. The Ohio Supreme Court, inState v. Madrigal (2000), 87 Ohio St.3d 378, 389-390, was careful to emphasize that, even where a motion to suppress may have been successful, a defendant is unable to meet the prejudice prong and establish ineffective assistance of counsel where sufficient evidence existed to support the conviction beyond the challenged evidence.
 {¶ 18} As such, even if we were to find that appellant's counsel erred in failing to file a motion to suppress the statements and admissions appellant made to Det. Brock, appellant's argument under this assignment of error would still fail because the remaining evidence presented against him was compelling. Appellant was twice found in possession of items stolen from the two homes. First, appellant was arrested on June 6, 2006 for DU I while driving the yellow Ford Mustang which was later identified as the vehicle stolen from the Durham-Deaton home. And later, when appellant was arrested on June 28, 2006 after being discovered passed out at a stop sign, items from the Brannen home, including a presidential medals coin collection, were found in the vehicle he was driving. Because appellant has failed to establish that his counsel's failure to file a motion to suppress prejudiced him, his claim of ineffective assistance must fail.
 {¶ 19} Accordingly, appellant's first assignment of error is overruled.
 {¶ 20} Assignment of Error No. 2:
 {¶ 21} "THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO CONVICT DEFENDANT OF BURGLARY UNDER R.C. 2911.12(A)(2) IN REGARD TO THE ALLEGED *Page 7 
INVASION OF THE DURHAM/DEATON PROPERTY AND THE BRANNEN PROPERTY"
 {¶ 22} In his second assignment of error, appellant asserts that the state failed to sufficiently prove all of the elements of the burglary charges and that his convictions must therefore be reversed.
 {¶ 23} In reviewing a claim of insufficient evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. State v. Jenks ( 1991), 61 Ohio St.3d 259. "[Sufficiency is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v.Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v.Haney, Clermont App. No. CA2005-07-068, 2006-Ohio-3899, ¶ 36.
 {¶ 24} R.C. 2911.12 provides, in relevant part:
 {¶ 25} "(A) No person, by force, stealth, or deception, shall do any of the following:
 {¶ 26} "* * * (2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense * * *."
 {¶ 27} Appellant argues that because the Durham-Deaton and Brannen families were out of town during the weekends that their homes were burglarized, the state failed to prove the element that a person was "likely to be present" during the times of the two burglaries, as required by R.C. 2911.12(A)(2).
 {¶ 28} In determining whether persons are likely to be present under R.C. *Page 8 2911.12(A)(2), a defendant's knowledge is not material. In reMeatchem, Hamilton App. No C-050291, 2006-Ohio-4128, ¶ 16. "The issue is not whether the burglar subjectively believed that persons were likely to be there, but whether it was objectively likely." Id., quotingState v. Cravens (June 25, 1999), Hamilton App. No C-980526; see, also,State v. Durham (1976), 49 Ohio App.2d 231, 239. "The significant inquiry is the `probability or improbability of actual occupancy which in fact exists at the time of the offense, determined by all the facts surrounding the occupancy.'" Id., quoting Cravens and citing State v.Fowler (1983), 4 Ohio St.3d 16, 18-19. "The state must adduce specific evidence that people were present or likely to be present." Id.;State v. Kilby (1977), 50 Ohio St.2d 21.
 {¶ 29} Although the term "likely" connotes something more than a mere possibility, it also connotes something less than a probability or reasonable certainty. State v. Miller, Clark App. No. 2006 CA 98,2007-Ohio 2361, ¶ 15; State v. O'Brien, Stark App. No. 2004CA00370,2005-Ohio-3765 (upholding conviction for burglary where occupant was temporarily living in domestic violence shelter but returned to her home occasionally to retrieve items). A person is likely to be present when a consideration of all the circumstances would seem to justify a logical expectation that a person could be present. State v. Green (1984),18 Ohio App.3d 69, 72.
 {¶ 30} In State v. Kilby, the Ohio Supreme Court explained that where a burglary occurs when the occupying family is temporarily absent, a showing that the occupied structure is a permanent dwelling house which is regularly inhabited and the occupants were in and out on the day in question will be sufficient evidence to support a conviction for burglary. 50 Ohio St.2d. at 25 (examining element of "likely to be present" under former aggravated burglary *Page 9 
statute R.C. 2911.11(A)(3)).[1] However, the fact that a permanent or temporary habitation has been burglarized does not give rise to the presumption that a person was present or likely to be present. State v.Wilson (1979), 58 Ohio St.2d 52, 59-60; Fowler, 4 Ohio St.3d at 18-19.
 {¶ 31} In State v. Hibbard, Butler App. Nos. CA2001-12-276, CA2001-12-286, 2003-Ohio-707, we discussed the court's Kilby decision and found that the state must show that the victim was home at varying times to prove that the victim was likely to be home at the time of the burglary. Id. at ¶ 12. Accordingly, we upheld convictions for second-degree burglary where the evidence demonstrated that victims were in and out of their homes on the day of the burglary and where a victim was periodically going back and forth between old and new residences. Id. at ¶ 19-23.
 {¶ 32} We further recognized that, where an occupant is away from the residence for a more extended period of time, such as on a vacation, evidence that the occupants have given a neighbor or other caretaker permission to enter the home regularly, is sufficient evidence that a person is likely to be present. Id. at ¶ 12. Ohio courts have found the evidence sufficient to support a conviction for second-degree felony burglary where it is shown that a neighbor or relative had access and permission to check on the home and was likely to be present at the time the home was burglarized. See State v. Blackmon (Jan. 2, 1992), Summit App. No. 15099 (finding strong likelihood of someone being present where occupants were on vacation, but returned soon afterwards and had neighbor or relative taking care of house while away).
 {¶ 33} At the trial in this case, Mr. Durham and Ms. Deaton testified that they left town on Friday, June 2 and did not return until the following Monday, June 5, 2006. Mr. Durham *Page 10 
and Ms. Deaton lived in the home with Ms. Deaton's seven-year-old son, who was away at his father's house for the weekend and did not have a key or access to the house. Ms. Deaton's twelve-year-old daughter also lived in the home part time and with her father part time, but did not have a key or access to the house while the family was away.
 {¶ 34} However, both also testified that Ms. Deaton's son, Steven, had been given permission to use the swimming pool while the family was away. Steven Deaton testified that he did not have a key or access to the house, but that he and his wife went to the house both Friday and Saturday evening to swim in the pool. Steven testified that the pool is in the back of the house along with a two-level deck that is enclosed in the yard by a fence.
 {¶ 35} Further, Mr. Durham also testified that two employees had keys and access to the home office located in the basement of the home. Mr. Durham explained that the employees were not permitted to enter the home during the weekend, but were allowed to enter the home office Monday through Friday. Mr. Durham's employees did enter the home office on Monday morning, the same day that the Durham-Deaton family returned home.
 {¶ 36} Based on this evidence, we find that there was sufficient activity occurring at the Durham-Deaton home that there existed a likelihood that someone could be present at the home during the commission of the burglary. Although Steven did not have keys to enter the home, he and his wife were at the home in the enclosed backyard area, swimming in the pool. He had permission and access to use the pool at any time during the weekend and did in fact use the pool twice. Additionally, Mr. Durham's employees had access to the home during the weekend of the burglary and did enter the home on Monday morning. Because we find that the state put forth sufficient evidence to demonstrate that someone was likely to be present at the Durham-Deaton home during the weekend of the burglary, appellant's argument on this issue is without merit.
 {¶ 37} As to the Brannen home, Mr. and Mrs. Brannen testified that they were out of *Page 11 
town for Memorial Day weekend from May 26 through May 30, 2006. Although their daughter also lived at the home, she did not have a key or access to the home while the Brannens were out of town. Mr. Brannen testified that his next-door neighbor had agreed to keep an eye on the house while the family was away. Although Mr. Brannen explained that he had not given the neighbor any instructions regarding watching the house, he stated that he understood that his neighbor would be watching for strange people or cars around the house. We find this to be sufficient evidence to demonstrate a likelihood that someone could be present at the home at the time of the burglary.
 {¶ 38} While we recognize that Ohio courts, including our own, have found the evidence supporting a conviction for second-degree felony burglary to be insufficient where there was no evidence presented to demonstrate that someone was regularly checking on the house, we find those cases to be factually distinguishable from the case at bar. SeeState v. Grimes (May 19, 1982), Clermont App. No 1070 (conviction modified to lesser included offense of burglary where occupant was away from home for four months and evidence demonstrated no one else had a key to the residence); State v. Cantin (1999), 132 Ohio App.3d 808
(finding insufficient evidence where occupant was on vacation for four days prior to burglary and no evidence demonstrated he had instructed anyone to check on the premises while he was away or that anyone else had a key); State v. Brown, Franklin App. No 05AP-601, 2006-Ohio-2307
(finding insufficient evidence where occupying family was out of town more than a week and no one else was regularly checking on the residence).
 {¶ 39} In this case, the evidence produced at trial demonstrated that Mr. Brannen's neighbor was affirmatively instructed to keep an eye on the home. While he did not have a key to enter the home, we find the fact that he was instructed to watch over the home sufficient to demonstrate a likelihood that he could have been present at the home at the time of the burglary. See, Hibbard, 2003-Ohio-707, ¶ 17 (finding sufficient evidence where family *Page 12 
was out of town on day of break-in, but resident's father was checking on the house); State v. Cochran (Jan. 30, 1986), Cuyahoga App. No. 50057 (finding sufficient evidence where resident was away on vacation but neighbor had key to enter and was instructed to check on house each day); State v. Weber (Dec. 23, 1997), Franklin App. No. 97APA03-322 (sufficient evidence that someone was likely to be present where occupants were away for winter but son and daughter had permission to be in home and neighbor was watching house and turned on porch light each day); but cf. State v. Beasley (Aug. 12, 1982), Ross App. 893, (where occupying family is on vacation and a relative is given a key and permission to enter but fails to do so, evidence will not support a finding that anyone was present or likely to be present at the time of the trespass).
 {¶ 40} While we agree with appellant that the state did not demonstrate a certainty that Mr. Brannen's neighbor would be at the home at the time of the burglary, that is not the standard required by the statute. Mr. Brannen's affirmative instruction to his neighbor created a likelihood that his neighbor would be watching over or checking on the Brannen home the weekend it was burglarized by appellant. We find that the intent of the General Assembly in creating the elevated offense of second-degree felony burglary — the protection of occupying residents from burglaries and the resulting potential harm by attempting to deter criminals-justifies the inclusion of those who have been instructed to watch over a residence as those "likely to be present." See, eg.,Kilby, 50 Ohio St.2d 21, 25.
 {¶ 41} As such, we find that the state presented sufficient evidence to support appellant's conviction on this count and his argument on this issue is without merit. Appellant's second assignment of error is overruled.
 {¶ 42} Judgment affirmed.
BRESSLER and POWELL, JJ., concur.
[1] Ohio's previous aggravated burglary statute under R.C.2911.11(A)(3) required proof of aggravating circumstances, including that persons were present or likely to be present. Cases interpreting this language continue to be instructive in analyzing current burglary statutes. *Page 1