[Cite as *State v. V.A.C.*, 2017-Ohio-5779.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


STATE OF OHIO,                              :

     Plaintiff-Appellee,                 :

                                    :

    - vs -

                                      :

V.A.C.,                                    :

     Defendant-Appellant.              :

CASE NO. CA2017-01-011

O P I N I O N
7/10/2017


APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 15-N000960


David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

Law Offices of Jeffery E. Richards, Jeffery E. Richards, 147 Miami Street, P.O. Box 536, Waynesville, Ohio 45068, for defendant-appellant


    **M. POWELL, J.**

    **{¶ 1}** Appellant, V.A.C., appeals from the decision of the Warren County Court of Common Pleas, Juvenile Division, adjudicating her a delinquent child. For the reasons outlined below, we affirm the juvenile court's decision.

    **{¶ 2}** Officer Darcy Workman with the Hamilton Township Police Department filed a complaint in the Warren County Juvenile Court alleging that V.A.C. was a delinquent child for

having committed an act that would constitute burglary in violation of R.C. 2911.12(B), a fourth-degree felony, if it had been committed by an adult. The complaint arose from allegations that V.A.C. forcibly entered a Warren County residence owned by Scott and Marybeth Gray ("the Grays"), without the Grays' permission. The complaint alleged that the burglary occurred on October 5, 2015, when V.A.C. was 12 years old.

{¶ 3} In January 2016, an adjudicatory hearing was conducted before a magistrate. During this hearing, the state presented testimony from the Grays, the Grays' neighbor, Beverly Luncan, and Officer Workman. The testimony revealed that Luncan observed V.A.C., along with two other 12-year-old girls, forcing their way into the Grays' garage. Luncan then called the police. Officer Workman arrived at the scene and heard talking and laughter in the garage. She ordered the occupants of the garage to come out. The talking and laughter stopped and shortly thereafter the three girls emerged from behind the residence and were subsequently arrested. At trial, Luncan identified the three girls as the same girls she had seen forcing their way into the Grays' garage.

{¶ 4} The magistrate issued a decision adjudicating V.A.C. a delinquent child. The court adopted the magistrate's finding of delinquency in March 2016. The court committed V.A.C. to the Warren County Juvenile Detention Center for a period of five days, all of which was suspended. The court also ordered V.A.C. to complete 20 hours of community service. V.A.C. now appeals from the juvenile court's decision, raising two assignments of error, which we address together.

{¶ 5} Assignment of Error No. 1:

{¶ 6} THE COURT ERRED IN FINDING APPELLANT A DELINQUENT CHILD DUE TO A LACK OF LEGALLY SUFFICIENT EVIDENCE.

{¶ 7} Assignment of Error No. 2:

{¶ 8} THE COURT ERRED IN FINDING APPELLANT A DELINQUENT CHILD DUE

TO AN INSUFFICIENT AMOUNT OF EVIDENCE (WEIGHT OF THE EVIDENCE).

{¶ 9} V.A.C. argues her adjudication as a delinquent child for having committed burglary in violation of R.C. 2911.12(B) was not supported by sufficient evidence and was otherwise against the manifest weight of the evidence. In reviewing whether a juvenile's delinquency adjudication is supported by sufficient evidence, the standard of review is the same as the standard used in adult criminal cases. *In re B.T.B.*, 12th Dist. Butler No. CA2014-10-199, 2015-Ohio-2729, ¶ 16. In those cases, when reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Intihar*, 12th Dist. Warren No. CA2015-05-046, 2015-Ohio-5507, ¶ 9. The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. In other words, "the test for sufficiency requires a determination as to whether the state has met its burden of production at trial." *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 34, citing *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298, ¶ 34. When evaluating the sufficiency of the evidence, this court must construe the evidence in favor of the state and "defer to the trier of fact on questions of credibility and the weight assigned to the evidence." *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, ¶ 132.

{¶ 10} As noted above, the court adjudicated V.A.C. a delinquent child for committing an act that, if committed by an adult, would constitute burglary in violation of R.C. 2911.12(B). Pursuant to that statute, no person, by force, stealth, or deception, "shall trespass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present." As such, the state was required to prove

beyond a reasonable doubt that V.A.C. used force, stealth, or deception to trespass into the Grays' Warren County residence at a time when another person, other than either of her two accomplices, was present or likely to be present. *In re A.C.D.*, 12th Dist. Warren No. CA2014-06-085, 2015-Ohio-232, ¶ 11.

{¶ 11} V.A.C. contends that the state failed to prove that: (1) she used force to gain access to the residence, (2) she was inside the residence, (3) she entered the residence without permission, and (4) persons were likely to be present in the residence. With respect to the first argument, V.A.C. contends that Luncan's testimony was the sole basis of the court's finding that she and her companions used force to enter the residence. Luncan testified that the three girls raised the garage door and then climbed under the door into the garage. However, V.A.C. points out that Luncan testified that she could not see the garage door.

{¶ 12} Any force used to gain entrance, however slight, is sufficient to establish the force element. *In re A.C.D.*, at ¶ 12. Accordingly, opening a closed but unlocked door is sufficient to demonstrate force. *Id.* Luncan testified that she observed all three juveniles attempting to open a window on the side of the house. Shortly after, Luncan observed the juveniles outside of the garage door. She could not see the garage door from her vantage. However, she could see the juveniles standing in front of the garage door and surmised from their actions that they were raising the garage door and then crawling underneath it: "I could only see them standing there, and, they were like they were trying to raise it, and, then it, it you could tell I could tell that they had raised it to a point they were climbing under it, and, at that point I called the police." Officer Workman testified that she heard voices in the garage and observed that the garage door was closed and the front door was locked. This was sufficient circumstantial evidence upon which the court could conclude, beyond a reasonable doubt, that V.A.C. and her companions used force by lifting the garage door in entering the

residence. We further conclude that the manifest weight of the evidence supports the conclusion that V.A.C. used force to enter the residence.

{¶ 13} V.A.C. contends that there was no evidence placing her inside the residence. We disagree. Luncan testified that she watched V.A.C. and her companions enter the garage. She then contacted the police. When Officer Workman arrived she heard voices, i.e., talking and laughing emanating from inside the garage. Officer Workman knocked on the front door of the residence and ordered the occupants to come outside. Officer Workman heard a commotion and the talking ceased. Then the three juveniles, including V.A.C., emerged from the back of the residence. This was sufficient evidence upon which the factfinder could conclude, beyond a reasonable doubt, that V.A.C. was inside the residence. We further conclude that the manifest weight of the evidence supports the conclusion that V.A.C. was inside the residence.

{¶ 14} V.A.C. argues that the state failed to prove that she was in the residence without permission. Specifically, V.A.C. contends that the Grays' did not testify whether they gave the juveniles permission to enter their residence. However, Scott testified that the only person who he authorized to visit the residence was his cousin, who he was paying to cut the grass. Moreover, as discussed above, the juveniles initially attempted to gain entry to the residence through windows, as opposed to a proper entryway. The juveniles reacted to Officer Workman's order to come outside with abrupt silence. The factfinder could conclude from this conduct that V.A.C. subjectively knew that she did not have permission to be in the residence and that she and her companions had done something wrong. This was sufficient evidence upon which the factfinder could conclude, beyond a reasonable doubt, that V.A.C. did not have permission to be inside the residence. We also conclude that the manifest weight of the evidence supports the conclusion that V.A.C. did not have permission to be inside the residence.

{¶ 15} Finally, V.A.C. argues that the state failed to prove that persons were likely to be present at the residence. V.A.C. argues that the facts showed that the Grays were not living at the residence, were only visiting the residence sporadically, and that Luncan thought the residence was abandoned.

{¶ 16} In determining whether persons are likely to be present under R.C. 2911.12(B), a defendant's knowledge is not material. *See State v. Pennington*, 12th Dist. Warren No. CA2006-11-136, 2007-Ohio-6572, ¶ 28. The issue is not whether the burglar subjectively believed that persons were likely to be there, but whether it was objectively likely. *Id.* Although the term "likely" connotes something more than a mere possibility, it also connotes something less than a probability or reasonable certainty. *Id.* at ¶ 29. A person is likely to be present when a consideration of all the circumstances would seem to justify a logical expectation that a person could be present. *Id.*

{¶ 17} The Ohio Supreme Court has held that the "likely to be present" element is satisfied where the structure is a permanent dwelling house which is regularly inhabited, the occupants were in and out of the house on the day in question, and the occupants were temporarily absent when the burglary occurred. *State v. Kilby*, 50 Ohio St.2d 21, 23 (1977). On the other hand, courts have found insufficient evidence that the occupants were likely to be present when they were absent for an extended period, such as a vacation, and no one else was regularly checking on the house. *See, e.g., State v. Cantin*, 132 Ohio App.3d 808 (8th Dist.1999); and *State v. Brightman*, 2d Dist. Montgomery No. 20344, 2005-Ohio-3173.

{¶ 18} The fact that a permanent or temporary habitation has been burglarized does not give rise to the presumption that a person was present or likely to be present. *Pennington*, 2007-Ohio-6572 at ¶ 30; *State v. Fowler*, 4 Ohio St.3d 16, 18-19 (1983). Likewise, "[t]he fact that a dwelling is used as a residence is not, standing alone, sufficient to show that someone is 'likely to be present' at the time of a burglary." *State v. Jackson*, 188

Ohio App.3d 803, 2010-Ohio-1846, ¶ 9 (4th Dist.). The state must adduce specific evidence that people were present or likely to be present. *Pennington* at ¶ 28.

{¶ 19} The record shows that, although no one was present in the residence at the time V.A.C. and her two accomplices forced their way into the Grays' garage, the Grays' Warren County residence constituted a permanent or temporary habitation where a person was likely to be present. Scott testified that he and Marybeth lived at the Warren County residence as their primary residence for the past 13 years. However, Scott's grandmother was ill and needed someone to care for her so he and his wife typically spent the night at the grandmother's house. During the time in question, Scott would go to the Warren County residence in the evening and stay for a few hours, or visit on the weekend, and his wife would go over sometimes during the day. These visits occurred on average at least three times a week, but Scott would also "go over there on a spurt, and, spend several days just kind of as needed." This included several instances where Scott testified that he and Marybeth spent the night at the Warren County residence.

{¶ 20} Scott further testified that he and Marybeth kept their clothes and other belongings at the Warren County residence, which was furnished, and that Scott paid his cousin to maintain and mow the yard. There was also testimony that Scott's sister had a key to the property. This testimony was later confirmed by Marybeth, who testified that she also stopped by the Warren County residence a "couple times a week," as well sometime during every weekend. The record further indicates that the Grays had last been to the property a mere two days earlier, on Saturday, October 3, 2015, and that they were "kind of on the fence of whether we were gonna stay there or whether we were gonna move[.]" Accordingly, there was sufficient evidence in the record to support the factfinder's conclusion, beyond a reasonable doubt, that the Warren County residence was a permanent habitation where another person, either the Grays or Scott's cousin or sister, were likely to be present. We

further conclude that the manifest weight of the evidence supports the finding of the court that persons were likely to be present in the residence.

{¶ 21} Based on the foregoing, the record contains sufficient evidence upon which the factfinder could conclude, beyond a reasonable doubt, that V.A.C. committed an act that if charged as an adult would have constituted burglary in violation of R.C. 2911.12(B). Moreover, we conclude that the greater weight of the evidence supports the court's adjudication of V.A.C. as a delinquent child. Accordingly, we overrule V.A.C.'s first and second assignments of error.

{¶ 22} Judgment affirmed.

S. POWELL, P.J. and RINGLAND, J., concur.