[Cite as *State v. Fluhart*, 2021-Ohio-3560.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2020-12-068 |
| Appellee, | : | O P I N I O N<br>10/4/2021 |
| | : | |
| - vs - | : | |
| | : | |
| CAROLYN FLUHART, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM CLERMONT COUNTY MUNICIPAL COURT
Case No. 2020-CRB-0666


Mark J. Tekulve, Clermont County Prosecuting Attorney, and Nicholas A. Horton, Assistant Prosecuting Attorney, for appellee.

Denise S. Barone, for appellant.


**M. POWELL, J.**

{¶ 1} Appellant, Carolyn Fluhart, appeals her conviction and sentence in the Clermont County Municipal Court following her no contest pleas to six counts of cruelty to companion animals and two counts of cruelty to animals.

{¶ 2} In January 2020, dozens of animals were found in a state of neglect at appellant's residence in Bethel, Ohio, where she lives with her husband, Lyle Fluhart

("Husband"). The complaint alleged that deputies with the Clermont County Sheriff's Department discovered the inside and outside of appellant's home completely littered with bags of trash, empty cat litter containers, and horse feces. There were 11 German Shepherds in the basement in cages that were coated with dried feces and matted newspaper. There was no food, water, or any form of bedding. Many of the German Shepherds were extremely thin, weak, and near death. Two German Shepherds were found dead.

{¶ 3} On February 18, 2020, appellant was charged with 11 counts of cruelty to companion animals. On March 30, 2020, appellant was further charged with six counts of cruelty to animals in two separate complaints. These complaints alleged that there were two Thoroughbred horses on appellant's porch, surrounded with three to four feet of manure and without food or water. There were also four Draft horses by appellant's barn, with no access to water, food, or clean fresh hay. The Draft horses were severely underweight and had worm bellies; their coats were matted and their hooves were cracked.

{¶ 4} Appellant initially retained private counsel. The trial court set a $25,000 own recognizance bond with conditions that appellant report to the jail for fingerprinting and that she not possess any companion animals or livestock. On August 3, 2020, appellant's counsel moved to withdraw from the case at appellant's request. The trial court granted the motion to withdraw, and appellant proceeded pro se. At the trial court's request, appellant was interviewed by the public defender's office which advised appellant she did not qualify for public defender representation. Consequently, though appellant requested substitute counsel, the trial court found that appellant was not indigent and could retain her own counsel. The trial court gave appellant several weeks to hire an attorney.

{¶ 5} Following a hearing on August 31, 2020, appellant executed a waiver of counsel. During the hearing, the trial court and appellant engaged in a lengthy colloquy to

determine whether she was able to retain an attorney. While appellant stated her belief she could not financially afford to hire her own counsel, she put forward no evidence of her financial issues. As it had done in a prior hearing, the trial court brought in an assistant public defender to explain why appellant was ineligible for their services. The public defender advised the court that appellant's assets and income rendered her ineligible. Satisfied that appellant could hire an attorney but chose not to, the trial court accepted appellant's waiver of counsel. While appellant wrote on the waiver that she believed she was eligible for a public defender, that the guidelines were incorrectly interpreted, and that she had no choice but to represent herself, she also acknowledged by signing the waiver that she had been found able to employ an attorney and was electing to represent herself. The signed waiver further stated that appellant understood her rights and responsibilities in choosing to represent herself, no one had forced or coerced her to sign the waiver, and she was executing the form knowingly and voluntarily. Appellant thereafter filed several motions, including a request for a bill of particulars and a demand for discovery.

{¶ 6} On September 18, 2020, the state moved to revoke appellant's bond, alleging she violated the conditions of her bond by having a cat in her home. During the bail revocation hearing, Chief Dog Warden Travis Milem testified he went to appellant's home after receiving an anonymous tip that appellant and Husband had a companion animal inside their home. Upon arriving at appellant's home, Chief Milem knocked on the door and Husband answered. As Chief Milem was explaining the reason for his visit, he saw a gray cat standing directly behind Husband. Chief Milem then told Husband that he needed to conduct a welfare check on the animals, but Husband told him to go away and slammed the door in his face. While still at the residence, Chief Milem noticed several food and water bowls on the front porch. Appellant cross-examined Chief Milem and attempted to establish the identity of the anonymous tipper. Appellant questioned Chief Milem's authority to

- 3 -

investigate bond violations as a dog warden and submitted a drawing of her house to challenge the chief's testimony he was able to see inside the house. During her case, appellant called Husband to testify and then testified on her own behalf. Following the hearing, the trial court imposed a cash or "professional bond."[1] Appellant was then taken into custody.

{¶ 7} On October 7, 2020, appellant appeared before the trial court for purposes of a plea. The prosecutor advised the court that he had visited appellant in jail earlier that day and that following a very productive conversation, they had agreed on the terms of a plea, to wit, in exchange for appellant pleading no contest to six counts of cruelty to companion animals and two counts of cruelty to animals, the state would dismiss the remaining charges and recommend that appellant be sentenced to jail for 60 days. Appellant agreed this was her understanding of the plea and told the trial court she was on board with the recommended sentence. The trial court advised appellant it was not bound by the recommended sentence.

{¶ 8} The trial court then went over appellant's right to counsel, noting that Husband was now eligible to be represented by the public defender's office.[2] The court informed appellant that if she wanted to be reassessed for public defender eligibility, it would not go through with the plea that day. Appellant took time to consider her options and upon speaking with the prosecutor, told the court she wanted to move forward and resolve the case that day. The court once again offered appellant the opportunity to be reassessed for eligibility. Appellant declined to be reassessed and stated her desire to move forward with

---

1. The term "professional bond" used in the trial court's judgment entry setting bond is not listed as a form of bail in Crim.R. 46 or R.C. 2937.22 et seq.

2. Appellant's husband, Lyle Fluhart, was sentenced to 510 days in jail following his no contest pleas to four counts of cruelty to companion animals and two counts of cruelty to animals. Husband's conviction and sentence stemmed from the same set of facts as here. We upheld Husband's conviction and sentence. *State v. Fluhart*, 12th Dist. Clermont No. CA2020-12-069, 2021-Ohio-2153.

the plea, representing herself. Appellant acknowledged her signature on the eight plea forms, knowingly, intelligently, and voluntarily waiving her right to counsel.

{¶ 9} Subsequently, the trial court outlined the details of the plea agreement and engaged in a colloquy regarding appellant's no contest pleas, advising appellant of the maximum possible penalty for each offense and the constitutional rights she was waiving by pleading no contest. Appellant advised the court that she was not coerced into pleading and was doing so of her own free will. The trial court accepted appellant's no contest pleas, finding they were knowingly, intelligently, and voluntarily entered. Thereafter, the state read a summary of the facts alleged in the complaint for each of the six charges of cruelty to companion animals. After each count was read, the trial court asked appellant if she was contesting the facts as read into the record. Each time, appellant replied, "No contest." The state also read a summary of facts for the two charges of cruelty to animals. Again, the trial court asked appellant if she was contesting the facts as read into the record. Each time, appellant replied, "No contest." Thereafter, the trial court announced that the facts were sufficient to find appellant guilty on all eight counts. The trial court ordered a presentence-investigative report ("PSI").

{¶ 10} The record reflects that appellant was noncooperative in the process of completing the PSI by failing to provide the probation officer with the full report of a mental health assessment provided while she was in jail. The PSI indicates that appellant refused to sign a release to share information regarding any diagnosis. Instead, appellant only signed a release to share information regarding her progress in services and attendance. During her presentence-investigative interview, appellant blamed the animals' condition on Husband's failing health, his failure to tell her he could no longer care for the animals, and her busy professional life. Appellant is a psychologist with a valid and active license in Ohio. She reported she also worked part-time for two companies. Appellant painted herself

as an innocent bystander who became involved at the last minute when, the night prior to the instant offenses, she finally recognized there was an issue.

{¶ 11} Prior to sentencing, appellant was reassessed for public defender representation and found to be eligible. As Husband was already represented by a public defender, the trial court appointed counsel for appellant. During the sentencing hearing, appellant denied any intentional wrongdoing and attributed the animals' condition on the fact that she "takes on too much." Appellant expressed remorse and stated she felt responsible. Appellant also stated, "we've kind of grieved a lot. So maybe it doesn't look that way but we've been through a lot with this. * * * The last couple of years have just been kind of hell, they've been really bad. And it just got past me. I try sometimes to do too much and I guess I couldn't. * * * I feel horrible that anything happened but I can't undo it. I just have to pick up and move forward."

{¶ 12} In sentencing appellant, the trial court stated it had considered the overriding purposes and principles of misdemeanor sentencing, the applicable sentencing factors, and the information contained in the PSI. The trial court noted that although it had strongly encouraged appellant to be honest and cooperative during the presentence-investigative interview, she failed to cooperate regarding her mental health assessment. The court further noted appellant's lack of remorse and failure to take responsibility, instead deflecting, minimizing her conduct, and blaming Husband's health issues. The court observed that appellant "spent the majority of the [presentence-investigative] interview talking about [Husband's] health issues as opposed to the horror that [she] and he inflicted" on the animals. The trial court further observed that appellant's focus at sentencing was about the case's impact on her and Husband as opposed to the animals.

{¶ 13} The trial court described the horrendous conditions and suffering endured by numerous animals in appellant's home and characterized the case as one of the worst

animal cruelty cases it had seen. The trial court stated the evidence belied appellant's assertion she was unaware of the animals' condition in the basement and simply let care slip for only a couple of weeks. The court also noted appellant's 2014 child endangering conviction which stemmed from discovering that appellant's daughter was living in a home where the floors were covered with animal feces and urine and where rotting food laid putrid on the ground. The trial court noted that while appellant was granted probation in that case to correct her behavior, she not only had not learned from her behavior, but had in fact escalated her behavior.

{¶ 14} After considering all the facts and circumstances, the trial court sentenced appellant to 60 days in jail for each of the six cruelty to companion animals offenses (all first-degree misdemeanors) and to 80 days in jail for each of the two cruelty to animals offenses (both second-degree misdemeanors). The trial court ordered that each term be served consecutive to one another, for an aggregate 520-day jail term.

{¶ 15} Appellant appeals, raising three assignments of error.

{¶ 16} Assignment of Error No. 1:

{¶ 17} THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY FAILING TO RECOGNIZE THAT HER COMPETENCY TO STAND TRIAL AND OTHERWISE ASSIST IN HER DEFENSE WAS IMPAIRED.

{¶ 18} Appellant argues the trial court erred in not finding her incompetent to stand trial, presenting three issues for review.

{¶ 19} In her first issue for review, appellant argues that the trial court erred in failing to sua sponte conduct a competency hearing and determine she was incompetent to stand trial given the way she comported herself in front of the court. In support of her argument, appellant cites the comments she wrote on her waiver of counsel.

{¶ 20} Fundamental principles of due process require that a criminal defendant who

is not competent to stand trial may not be tried and convicted. *State v. Braden*, 98 Ohio St.3d 354, 2003-Ohio-1325, ¶ 114. A defendant is presumed to be competent unless it is demonstrated by a preponderance of the evidence that he is incapable of understanding the nature and objective of the proceedings against him or of assisting in his defense. R.C. 2945.37(G). "Incompetency must not be equated with mere mental or emotional instability or even with outright insanity. A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel." *State v. Bock*, 28 Ohio St.3d 108, 110 (1986). The burden of rebutting the presumption and establishing incompetence by a preponderance of the evidence is upon the defendant. *State v. Lampley*, 12th Dist. Butler No. CA2011-03-046, 2011-Ohio-6349, ¶ 10.

{¶ 21} R.C. 2945.37(B) provides that

> In a criminal action in a court of common pleas, a county court, or a municipal court, the court, prosecutor, or defense may raise the issue of the defendant's competence to stand trial. If the issue is raised before the trial has commenced, the court shall hold a hearing on the issue * * *. If the issue is raised after the trial has commenced, the court shall hold a hearing on the issue only for good cause shown or on the court's own motion.

{¶ 22} "A trial court must hold a competency hearing if a request is made before trial, R.C. 2945.37(B), or if the record contains sufficient indicia of incompetence that an inquiry is necessary to ensure that the defendant is accorded his rights to due process and a fair trial." *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, ¶ 55. Further, "'absent a request by counsel, or any indicia of incompetence, a competency evaluation is not required.'" *Lampley*, 2011-Ohio-6349 at ¶ 12, quoting *State v. Cowans*, 87 Ohio St.3d 68, 81, 1999-Ohio-250.

{¶ 23} Upon a thorough review of the record, we find that the trial court did not err when it did not sua sponte raise the issue of appellant's competency to stand trial or conduct

a competency hearing. The issue of appellant's competency to stand trial was never raised by appellant, her former counsel, or the state in any of the proceedings below. Given the definition of incompetency under R.C. 2945.37(G) and *Bock,* appellant's handwritten comments on her waiver of counsel are not sufficient to indicate a lack of competency. *Lampley* at ¶ 17. Further, "'emotional stress and mental anguish * * * are not the type of incapacity that the competency rule intends to protect.'" *Id.,* quoting *State v. Love,* 6th Dist. Lucas No. L-96-156, 1997 Ohio App. LEXIS 957, *12 (Mar. 21, 1997).

{¶ 24} Likewise, the record does not indicate that appellant was incompetent to stand trial. Appellant's interactions with the trial court, while indicating her lack of familiarity with court proceedings, show that she understood the nature and objective of the proceedings against her and that she was capable of assisting in her own defense. Appellant appropriately answered the trial court's questions in the proceedings below, inquired about evidence she had not received from the state on two separate occasions, filed a request for a bill of particulars and a demand for discovery, and demonstrated her ability to examine and cross-examine witnesses and submit evidence. Finally, appellant's behavior throughout the proceedings below was not outrageous, irrational, or confused. *Montgomery,* 2016-Ohio-5487 at ¶ 59.

{¶ 25} In her second issue for review, appellant argues the trial court abused its discretion by failing to appoint counsel to represent her. Appellant asserts that after her former counsel withdrew from the case, the trial court simply "decided she was not indigent and therefore did not qualify for public defender representation, even though [Husband] did qualify and was represented" by a public defender.

{¶ 26} An individual has a constitutional right to represent himself or herself. *State v. Thompson,* 121 Ohio St.3d 250, 2009-Ohio-314, ¶ 6. Appellant was charged with and convicted of misdemeanor offenses, each carrying a maximum penalty of 180 days or less

in jail. The offenses were therefore "petty offenses" under Crim.R. 2. Crim.R. 44 provides that

> (B) Counsel in petty offenses
> Where a defendant charged with a petty offense is unable to obtain counsel, the court may assign counsel to represent the defendant. When a defendant charged with a petty offense is unable to obtain counsel, no sentence of confinement may be imposed upon the defendant, unless after being fully advised by the court, the defendant knowingly, intelligently, and voluntarily waives assignment of counsel.
>
> (C) Waiver of counsel
> Waiver of counsel shall be in open court and the advice and waiver shall be recorded as provided in Rule 22. In addition, in serious offense cases the waiver shall be in writing.

{¶ 27} Waiver of counsel must be made on the record in open court, and in petty offense cases, recorded. *State v. Brooke*, 113 Ohio St.3d 199, 2007-Ohio-1533, ¶ 24; Crim.R. 22. "[T]o establish an effective waiver of right to counsel, the trial court must make sufficient inquiry to determine whether [a] defendant fully understands and intelligently relinquishes that right." *State v. Gibson*, 45 Ohio St.2d 366 (1976), paragraph two of the syllabus. In order for the defendant to competently and intelligently choose self-representation, he must be made aware of the dangers and disadvantages of self-representation so that the record will establish that he knows what he is doing and his choice is made with eyes open. *State v. Dinka*, 12th Dist. Warren No. CA2013-03-021, 2013-Ohio-4646, ¶ 15.

{¶ 28} Appellant originally retained private counsel before terminating him on August 4, 2020. At the trial court's request, appellant was interviewed by the public defender's office that same day. After the interview, appellant reported to the court that she was ineligible for a public defender. She was granted two weeks to decide whether she wanted to retain private counsel. Subsequently, the trial court had an assistant public defender

come before the court on two separate occasions to explain why appellant was ineligible. During a pretrial hearing on August 18, 2021, the public defender advised the court that appellant and Husband were not eligible based upon their assets. Appellant was granted two additional weeks to determine whether she wanted to retain private counsel. On August 31, 2020, the public defender once again advised the trial court that appellant was not eligible based upon her assets and that her ineligibility was not a close question. The record does not indicate and appellant's brief does not discuss her financial circumstances or the guidelines used by the public defender's office to determine appellant's eligibility for court-appointed counsel. During pretrial hearings held between August 18, 2020, and September 21, 2020, the trial court engaged in several colloquies with appellant to determine if she was able to retain counsel. The court further warned her multiple times of the dangers of self-representation.

{¶ 29} On August 31, 2020, following the trial court's extensive discussion with appellant of the dangers of self-representation, the public defender's statement to the court that appellant was not eligible for a court-appointed counsel, and appellant declining to be heard on the matter, appellant executed a waiver of counsel, electing to proceed pro se. As stated above, appellant wrote on the waiver that she believed she was eligible for a public defender, that the guidelines were incorrectly interpreted, and that she had no choice but to represent herself. However, appellant presented no evidence of her financial issues and why she was unable to retain private counsel. The trial court accepted appellant's waiver of counsel.

{¶ 30} The record shows that while Husband became eligible for court-appointed counsel on October 7, 2020, appellant was not appointed counsel until her sentencing hearing on November 2, 2020. The record does not indicate and appellant's brief does not discuss how appellant's financial circumstances changed in such a short interval that she

qualified for court-appointed counsel.

{¶ 31} Upon a thorough review of the record, we find that the trial court did not err in failing to appoint counsel to represent appellant before sentencing. The public defender's office advised the trial court on multiple times that appellant was not eligible and appellant presented no evidence of her financial circumstances during the proceedings below or on appeal. The record does not show that appellant was in fact unable to retain an attorney. Rather, the record indicates that appellant was either unwilling to use her assets to retain counsel or simply believed she could not afford to retain counsel. The trial court warned appellant multiple times of the dangers of self-representation, including during the waiver of counsel hearing. The trial court's colloquy with appellant followed by her waiver of counsel on August 31, 2020, shows that appellant knowingly, intelligently, and voluntarily waived her right to counsel in open court as required by Crim.R. 44(B) and (C).

{¶ 32} In her third issue for review, appellant suggests that her no contest pleas were not entered knowingly, intelligently, and voluntarily because the plea hearing occurred nine days after her bond was modified to a $85,000 cash or professional bond and she was taken into custody, and the pleas were negotiated directly between her and the prosecutor assigned to the case.

{¶ 33} Appellant implies there was something unethical or underhanded regarding her dealings with the prosecutor when he visited her in jail or during the plea hearing on October 7, 2020. However, because appellant was representing herself, the prosecutor was free to deal directly with her. There is no indication the prosecutor took advantage of appellant, and she explicitly acknowledged on the record that the prosecutor was not her attorney.

{¶ 34} A trial court's acceptance of a defendant's no contest plea to a petty misdemeanor offense is governed by Crim.R. 11(E), which provides, "In misdemeanor

cases involving petty offenses the court may refuse to accept a plea of guilty or no contest, and shall not accept such plea without first informing the defendant of the effect of the pleas of guilty, no contest, and not guilty."  "[I]n accepting a plea to a misdemeanor involving a petty offense, a trial court is required to inform the defendant only of the effect of the specific plea being entered."  *State v. Jones*, 116 Ohio St.3d 211, 2007-Ohio-6093, ¶ 20.  That is, the "defendant must be informed that the plea of no contest is not an admission of guilt but is an admission of the truth of the facts alleged in the complaint, and that the plea or admission shall not be used against the defendant in any subsequent civil or criminal proceeding."  *Id.* at ¶ 23; Crim.R. 11(B)(2).

{¶ 35}  During the October 7, 2020 plea hearing, the trial court informed appellant that a no contest plea was not an admission of guilt but was an admission of the truth of the facts alleged in the complaint, and that the plea could not be used against her in any subsequent civil or criminal proceeding.  The trial court, therefore, informed appellant of the effect of her pleas as required by Crim.R. 11(E).  We note that the trial court's plea colloquy went beyond what the rule requires in that the court also informed appellant of the nature of the offenses, the potential penalties for each offense, and the rights she was waiving by pleading no contest.  Appellant further advised the trial court that she was not coerced into pleading and that she was doing so of her own free will.  We therefore find that appellant's no contest pleas were knowingly, intelligently, and voluntarily entered.

{¶ 36}  Appellant's first assignment of error is overruled.

{¶ 37}  Assignment of Error No. 2:

{¶ 38}  THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN SENTENCING HER TO SERVE FIVE-HUNDRED AND FORTY DAYS.

{¶ 39}  Appellant argues the trial court erred in sentencing her to 520 days in jail (and not 540 days as appellant mistakenly asserts in her brief).  Appellant acknowledges that the

trial court was not bound by the plea agreement between her and the state, which would have been an agreed sentence of 60 days in jail. Nonetheless, appellant argues her sentence is excessive and suggests it was motivated by her failure to present herself well during the presentence-investigative interview due to a lack of legal guidance and advice. Appellant asserts the trial court "hammered [her] with an excessive sentence" because she did not present herself in the manner the trial court expected.

{¶ 40} We review a trial court's sentence on a misdemeanor violation under an abuse of discretion standard. *State v. Jezioro*, 12th Dist. Warren No. CA2016-10-088, 2017-Ohio-2587, ¶ 6. An abuse of discretion implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Fluhart*, 12th Dist. Clermont No. CA2020-12-069, 2021-Ohio-2153, ¶ 23.

{¶ 41} Pursuant to R.C. 2929.21 and 2929.22, trial courts have broad discretion when determining what sentence is appropriate for each given misdemeanor case. *State v. Kinsworthy*, 12th Dist. Warren No. CA2013-06-060, 2014-Ohio-2238, ¶ 30. When determining the appropriate sentence, the trial court must be guided by the purposes of misdemeanor sentencing which are "to protect the public from future crime by the offender and others and to punish the offender." R.C. 2929.21(A). The trial court must also consider the factors listed in R.C. 2929.22(B)(1), including the nature and circumstances of the offense, and may consider any other factors that are relevant to achieving the purposes and principles of misdemeanor sentencing. R.C. 2929.22(B)(2).

{¶ 42} A trial court is not required to make consecutive sentence findings under R.C. 2929.14(C)(4) prior to ordering consecutive sentences for jail terms imposed for misdemeanor offenses. *State v. Prickett*, 12th Dist. Butler No. CA2017-01-010, 2017-Ohio-8128, ¶ 24. The trial court need only "specify" that the jail terms being imposed are to be served consecutively. *State v. Henson*, 12th Dist. Clermont No. CA2020-07-037, 2021-

Ohio-38, ¶ 17.

{¶ 43} It is well established that a trial court is not bound to accept the prosecution's recommended sentence as part of a negotiated plea agreement. *State v. Hendrix*, 12th Dist. Butler No. CA2012-05-109, 2012-Ohio-5610, ¶ 21. "While a trial court should not completely disregard the sentence recommended by the state, it does not err by imposing a sentence greater than that forming the inducement for the defendant to plead guilty when the trial court forewarns the defendant of the applicable penalties, including the possibility of imposing a greater sentence than that recommended by the state." *State v. Hunley*, 12th Dist. Clermont No. CA2002-09-076, 2003-Ohio-5539, ¶ 16.

{¶ 44} After a thorough review of the record, we find no error in the trial court's decision to sentence appellant to serve 520 days in jail for the six first-degree misdemeanor offenses and two second-degree misdemeanor offenses. The trial court specifically advised appellant it was not bound by the recommended sentence and that she could be sentenced up to 540 days in jail. The sentence imposed for each offense falls within the statutory limits for first-and-second-degree misdemeanor offenses. R.C. 2929.24(A)(1) (the maximum jail term a trial court can impose for a first-degree misdemeanor offense is 180 days); R.C. 2929.24(A)(2) (the maximum jail term a trial court can impose for a second-degree misdemeanor offense is 90 days). The trial court specifically noted that it had considered the purposes of misdemeanor sentencing, which are to punish the defendant and protect the public. Moreover, the record indicates the trial court considered the factors set forth in R.C. 2929.22.

{¶ 45} The trial court specifically addressed the severity of the offenses as reason for imposing the sentence. In this case, the dogs had been left in cages in the basement for long periods of time with no access to fresh air, light, or exercise. The cages were covered in feces and the dogs were malnourished with matted hair. Two dogs had perished

- 15 -

and were left to decompose in front of the surviving dogs. The horses found on appellant's property were extremely underweight, had no access to food or water, and had no access to shelter or exercise because their exits were blocked by feet of manure.

{¶ 46} Although the trial court had strongly encouraged appellant to be honest and cooperative during the presentence-investigative interview and emphasized the importance of being candid and honest, appellant failed to cooperate regarding her mental health assessment and was not candid and honest regarding the animals' horrendous living conditions. The trial court noted appellant's failure to comply with the conditions of her OR bond, as a cat was kept in her home, her lack of remorse and failure to take responsibility, her minimization of her conduct, her prior child endangering conviction, and the fact that while appellant was granted probation in that case to correct her behavior, she not only had not learned her lesson, but had in fact escalated her behavior.

{¶ 47} In light of the foregoing, we find the trial court did not abuse its discretion in sentencing appellant to 520 days in jail. Appellant's second assignment of error is overruled.

{¶ 48} Assignment of Error No. 3:

{¶ 49} HAD TRIAL COUNSEL BEEN EFFECTIVE, HE WOULD HAVE PERSUADED THE COURT TO DISMISS THE CASE IN ITS ENTIRETY [DUE] TO THE UNCONSTITUTIONALITY OF THE RAID.

{¶ 50} Appellant argues trial counsel was ineffective because he failed to move to suppress the seizure of the animals and her statements to police.

{¶ 51} To prevail on her ineffective assistance of counsel, appellant must show that her trial counsel's performance was deficient, and that she was prejudiced as a result. *State v. Petit*, 12th Dist. Madison No. CA2016-01-005, 2017-Ohio-633, ¶ 39; *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052 (1984). The failure to satisfy either

prong of the *Strickland* test is fatal to an ineffective assistance of counsel claim. *Petit* at ¶ 39. Trial counsel's performance will not be deemed deficient unless it fell below an objective standard of reasonableness. *Strickland* at 688. To show prejudice, appellant must establish that, but for her trial counsel's errors, there is a reasonable probability that the result of the outcome would have been different. *Id.* at 694.

{¶ 52} The failure to file a motion to suppress is not per se ineffective assistance of counsel. *State v. Pennington*, 12th Dist. Warren No. CA2006-11-136, 2007-Ohio-6572, ¶ 15. Failure to file a motion to suppress signifies ineffective assistance of counsel only where the record establishes that the motion would have been successful if made. *Id.* Where a record contains no evidence that would justify the filing of a motion to suppress, appellant has not met the burden of proving that trial counsel violated an essential duty by failing to file the motion. *Id.*

{¶ 53} Appellant fired her trial counsel on August 4, 2020, and then represented herself until after she had entered her no contest pleas on October 7, 2020. The record shows that appellant filed several motions while representing herself. Thus, nothing prevented her from filing a motion to suppress her statements to police and the seizure of the animals. We decline to address appellant's argument that her statements to police should have been suppressed because she was not advised of her *Miranda* rights. Appellant does not specify what statements she made to police and whether the circumstances surrounding the statements required *Miranda* warnings. It is not the duty of an appellate court to search the record for evidence to support an appellant's argument as to any alleged error. *State v. Wilson*, 12th Dist. Warren No. CA2018-03-022, 2019-Ohio-338, ¶ 27. An appellate court is not a performing bear, required to dance to each and every tune played on an appeal. *Id.*

{¶ 54} In support of her ineffective-assistance of counsel argument, appellant also

argues that the seizure of the animals was unconstitutional and should have been suppressed because the dog warden seized the animals without a court order in violation of R.C. 955.12, and he was not an "officer" as defined under R.C. 959.132(A)(4) and thus had no authority to seize the animals under R.C. 959.132.

{¶ 55} The only information in the record concerning the circumstances under which the animals were seized comes from the trial court's comments during the sentencing hearing. The trial court indicated that police responded to appellant's home on January 3, 2020, on a report of domestic violence. Once there, officers observed multiple animals inside the house as well as the horrendous conditions present in the house. Appellant claimed to have 11 dogs, several cats, and 6 horses. She signed over those animals to the dog warden. On January 6, 2020, the dog warden went to appellant's home to take possession of the animals signed over by appellant. Once there, an additional 11 German Shepherds were discovered in the basement of the home in cages, and they were seized as well.

{¶ 56} R.C. 955.12 provides in relevant part that "[i]f a dog warden has reason to believe that a dog is being treated inhumanely on the premises of its owner, keeper, or harborer, the warden shall apply to the court of common pleas for the county in which the premises are located for an order to enter the premises, and if necessary, seize the dog. If the court finds probable cause to believe that the dog is being treated inhumanely, it shall issue such an order." We note that the dog warden was lawfully on appellant's property on January 6, 2020, as he came to take possession of the animals signed over by appellant three days earlier.

{¶ 57} R.C. 955.12 further provides that "wardens and deputies shall have the same police powers as are conferred upon sheriffs and police officers in the performance of their duties as prescribed by [R.C.] 955.01 to 955.27 and 955.50 to 955.53." Thus, the statute

invests dog wardens and their deputies with statutory police powers of a nature similar to those of law enforcement officers. *See In re Compatibility of County Dog Warden & Village Marshal*, 19 Ohio Misc.2d 12 (C.P.1984) (R.C. 955.12 provides that a dog warden shall have similar police powers as general law enforcement officers in the discharge of duties relating to dogs); *State v. Jones*, 11th Dist. Portage Nos. 2010-P-0051 and 2010-P-0055, 2011-Ohio-5109, ¶ 55 (dog wardens and their deputies are enforcement agents charged with investigative duties and the responsibility of enforcing the statutes regulating and protecting dogs).

{¶ 58} R.C. 959.132(B) provides, "An officer may seize and cause to be impounded at an impounding agency an animal that the officer has probable cause to believe is the subject of an offense." R.C. 959.132(A) defines "officer" as "any law enforcement officer, humane society agent, or other person appointed to act as an animal control officer for a municipal corporation or township in accordance with state law, an ordinance, or a resolution." The definition does not specifically include a dog warden. R.C. 2901.01(A)(11)(b) defines "law enforcement officer" as including "[a]n officer, agent, or employee of the state or any of its agencies, instrumentalities, or political subdivisions, upon whom, by statute, a duty * * * to enforce all or certain laws is imposed and the authority to arrest violators is conferred, within the limits of that statutory duty and authority." In light of the statutes above, a dog warden has a duty to enforce certain laws and is an "officer" for purposes of enforcing statutes regulating and protecting dogs such as R.C. 959.132.

{¶ 59} In any event, violation of either R.C. 955.12 or 959.132 may not serve as the basis for suppressing evidence. *See State v. Weideman*, 94 Ohio St.3d 501, 2002-Ohio-1484 (statutory violation does not require the suppression of all evidence where statutory violation does not rise to the level of a constitutional violation because seizure was not unreasonable per se under the Fourth Amendment); *State v. Hamrick*, 12th Dist. Madison

No. CA2011-01-002, 2011-Ohio-5357, ¶ 20 (even if law enforcement used an invalid court order to obtain defendant's information, this statutory violation would not provide defendant with a basis to suppress this information or any evidence stemming therefrom). Suppression is a remedy only for a violation of the Fourth Amendment, which in turn, only requires that a search and seizure be reasonable, that is, supported by probable cause. The Fourth Amendment is not concerned with which state actors are authorized by state law to effect a seizure of property or with mandated statutory procedures.

{¶ 60} Furthermore, the record does not suggest that a motion to suppress would have been successful. Appellant had consented to the seizure of some of her animals, the dog warden was lawfully on the property to seize those animals, and the conditions in which the additional animals were discovered gave rise to probable cause that the animals were kept in violation of R.C. 959.131. Trial counsel was therefore not ineffective for failing to move to suppress the seizure of the 11 German Shepherds.

{¶ 61} Appellant's third assignment of error is overruled.

{¶ 62} Judgment affirmed.

PIPER, P.J., and BYRNE, J., concur.